# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERMENEGILDO ("JAY") MARTINEZ, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE WELK GROUP, Inc.; WELK RESORT GROUP Inc.; WELK MUSIC GROUP, Inc.; SOLEIL COMMUNICATIONS, Inc.; and DOES 1 through 25,<br><br>Defendants. | CASE NO. 09 CV 2883 MMA (WMc)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS;**<br><br>[Doc. No. 42]<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE**<br><br>[Doc. No. 47] |

Defendants The Welk Group, Inc., Welk Resort Group, Inc., Welk Music Group, Inc., and Soleil Communications, Inc. ("Defendants") filed a motion to dismiss and a motion to strike Plaintiff Hermenegildo ("Jay") Martinez's ("Plaintiff") Third Amended Complaint ("TAC"). [Doc. Nos. 42, 47.] Defendants also requested the Court take judicial notice of certain documents in support of their motions. Plaintiff filed his oppositions [Doc. Nos. 50, 51, 52], to which Defendants replied. [Doc. Nos. 54, 55.] The Court, finding the matters suitable for resolution without oral argument, took the matters under submission pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss, and **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to strike.

## **BACKGROUND**

Plaintiff brings this putative class action on behalf of himself and other time-share owners of the Welk Resorts. Resort accommodations include resorts in Maui Hawaii; Palm Desert; Branson, Missouri; Cabo San Lucas, and a "flagship property" at the Welk Resort San Diego, California. In 2007, Plaintiff entered into an agreement to purchase a time-share interest, represented by 120,000 points in the "Welk Resort Platinum Program." [Doc. No. 39-1, p. 4.] In April 2009, Plaintiff "upgraded" his ownership interest to 240,000 points. The ownership grants Plaintiff "the right to use and occupy an individual dwelling unit at any of the Resort Accommodations within the Program . . . ." [Id. at 34.]

On September 17, 2010, Plaintiff filed the TAC. [Doc. No. 39.] Plaintiff alleges the Welk Resort San Diego developed substantial water leaks, which caused mold, mildew, and fungus to grow in time-share units throughout the complex. Plaintiff alleges Defendants knew of, or were able to ascertain, the water leaks and the problems that were the result of these leaks. He contends Defendants failed to resolve the problems by, among other things, failing to investigate and cure the problems, ignoring recommendations to hire professionals to clean up the units, and charging fees for repairs that were not made.

Plaintiff alleges six claims in his TAC: (1) breach of contract; (2) breach of fiduciary duty; (3) negligence; (4) private nuisance; (5) unfair competition in violation of CAL. BUS. & PROF. CODE § 17200 *et seq*.; and (6) breach of implied warranty of habitability. Attached to the TAC is a sixty-two page exhibit that Plaintiff alleges comprise the "Purchase and Sales Agreement." The exhibit contains documents Plaintiff signed in 2007 when he originally purchased his time-share interest ("2007 Agreement"), and documents Plaintiff signed in 2009 when he upgraded his ownership interest to 240,000 points ("2009 Agreement").

On October 1, 2010, Defendants filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative to require Plaintiff to provide a more definite statement under Rule 12(e). Defendants filed the instant motion to strike portions of Plaintiff's TAC under Federal Rule of Civil Procedure 12(f). Defendants also submitted a request for judicial notice of certain documents in support of their motions.

# DISCUSSION

A. *Request for Judicial Notice*

In deciding a motion to dismiss or motion to strike, a court may consider matters of which the judge may take judicial notice. *US v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2007). Federal Rule of Evidence 201 provides that a judicially noticed adjudicative fact must be "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201.

"Legislative facts are 'established truths, facts or pronouncements that do not change from case to case but [are applied] universally.'" *Korematsu v. U.S.*, 584 F.Supp. 1406, 1414 (C.D.Cal. 1984) (quoting *United States v. Gould*, 536 F.2d 216, 220 (8th Cir.1976)). Unlike adjudicative facts, judicial access to legislative facts is not subject to a limitation of indisputability, or to any other formal requirements of notice. *See* Fed. R. Evid. 201 advisory committee's note.

Defendants request the Court take judicial notice of three exhibits. Exhibit A is the California Department of Public Health's Toxic Mold Protection Act of 2001 Implementation Update. Exhibit B is the Barclays Official California Code of Regulations; Part II: Table of Statutes to Regulations. Exhibit C is the Final Time-Share Plan Public Report Multiple-Site Time-Share Plan (Non-Specific Time-Share Interest) for Welk Resorts Platinum Program ("Public Report"), issued by the Department of Real Estate of California. [Doc. No. 47.] The Court addresses each of Defendants' requests in turn.

Exhibit A, the California Department of Public Health's Toxic Mold Protection Act of 2001 Implementation Update, is a matter of public record. Courts may take judicial notice of undisputed matters of public record. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Where the court takes judicial notice of a public record, the court may not take judicial notice of "*disputed* facts stated in public records." *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original). Here, Plaintiff argues the Court should not take judicial notice of Exhibit A because it is being offered to dispute Plaintiff's factual allegations and to assert Defendants' version of the facts regarding mold exposure. [Doc. No. 52.] The Court disagrees. Defendants

1  are not asking the Court to take judicial notice of disputed facts pertinent to the case that are stated
2  in public records.  Rather, Defendants are offering the document to "demonstrate[] the *legal*
3  *infirmity* of Plaintiff's unfair business practices allegations."  [Doc. No. 55 at 3.]  Accordingly, the
4  Court **GRANTS** Defendants' request for judicial notice of Exhibit A, however, the Court shall not
5  rely upon this document to determine disputed factual issues.

6        Exhibit B is a table of statutes to the California Code of Regulations and is a public record
7  of state law.  Courts routinely take judicial notice of state or federal statutes and regulations.  *See*
8  *Roemer v. Board of Public Works of Maryland*, 426 U.S. 736, 743 n.2 (1976) (taking judicial
9  notice of state regulations); *Mora v. Vasquez*, 199 F.3d 1024, 1028 n.7 (9th Cir. 1999) (taking
10 judicial notice of Code of Federal Regulations).  Here, the table of statutes is readily ascertainable,
11 and Defendants are offering the exhibit to show that no mold exposure standards or guidelines
12 have been promulgated.  A court may properly take judicial notice of the existence – or in this case
13 nonexistence – of certain documents.  Accordingly, the Court **GRANTS** Defendants' request for
14 judicial notice of Exhibit B.

15       Exhibit C is a copy of the "Public Report" issued by the Department of Real Estate
16 regarding the Welk Resort Platinum Program.  Defendants contend the Court may take judicial
17 notice of Exhibit C because it may be considered as part of, and incorporated by reference into,
18 Exhibit 1 of the TAC.  Plaintiff contends Defendants are improperly using Exhibit C to dispute
19 Plaintiff's factual allegations regarding his property interests.

20       The Court cannot take judicial notice of Exhibit C to the extent Defendants offer the
21 exhibit for the contents of the Public Report.  Defendants offer the Public Report to support their
22 contention that Plaintiff acquired no real property interest, which contradicts Plaintiff's factual
23 allegations regarding the nature of his property interests.  *See Lee v. City of Los Angeles*, 250 F.3d
24 at 690.  The Public Report is, however, a document the Court may properly take into consideration
25 on a motion to dismiss under the doctrine of incorporation by reference. "Even if a document is not
26 attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers
27 extensively to the document or the document forms the basis of the plaintiff's claim."  *U.S. v.*
28 *Ritchie*, 342 F.3d at 908 (internal citations omitted).  "A court may consider a writing referenced in

a complaint but not explicitly incorporated therein if the complaint necessarily relies on the document and its authenticity is unquestioned." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998), (superseded by statute on other grounds in *Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)); *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007). The "incorporation by reference" doctrine has been "extended to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Kneivel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005).

Plaintiff makes numerous references to the Purchase and Sales Agreement documents in his TAC. Because Plaintiff's claims rest on the contents and terms of the Purchase and Sales Agreement, documents that are explicitly referenced in the Purchase and Sales Agreement, and that help define the terms of the Purchase and Sales Agreement, are essential to his claims. The Public Report includes explanations regarding the rights Plaintiff acquired by entering into the Agreement. Plaintiff contends Defendants offer no support as to why the facts contained in the Public Report "cannot reasonably be questioned," thereby indirectly questioning the authenticity of the document. The Court finds Plaintiff's attempt to dispute the authenticity of Exhibit C is unsupported, given that Plaintiff's Purchase and Sales Agreement documents explicitly state that Plaintiff read and received a copy of the Public Report.

Accordingly, the Court **DENIES** Defendants' request for judicial notice of Exhibit C, but takes into consideration the Public Report under the doctrine of incorporation by reference.

Plaintiff argues that if the Court takes judicial notice of the exhibits, it must convert this motion into a motion for summary judgment. The Court disagrees. "If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the nonmoving party an opportunity to respond. Fed. R. Civ. P. 12(d); *see United States v. Ritchie*, 342 F.3d at 907. "A court may, however, consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for

summary judgment." *Id.* at 908. Here, Exhibits A and B are matters of judicial notice, and Exhibit C is a document incorporated by reference in the TAC. Thus, the Court need not convert Defendants' motion to dismiss into a motion for summary judgment.

### B. Motion to Dismiss

A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d at 1072. Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, *supra*, 129 S. Ct. at 1950.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) Plaintiff's claims for breach of contract; breach of fiduciary duty; private nuisance; and breach of the implied warranty of habitability. The Court addresses each in turn.

### 1. Breach of Contract

Defendants argue the breach of contract claim should be dismissed as to Defendants The

Welk Group, Inc., Welk Music Group, Inc., and Soleil Communications, Inc. because they are not signatories to the contract, and under California law only a signatory to a contract may be liable for any breach. Plaintiff argues the breach of contract claim should not be dismissed as to any of the defendants because they are all liable as joint venturers, and joint venturers have the authority to bind other venturers to a contract. Defendants reply Plaintiff's TAC alleges an agency relationship, and not a joint venturer relationship.

"A joint venture . . . is an undertaking by two or more persons jointly to carry out a single business enterprise for profit. There are three basic elements of a joint venture: the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise. Whether a joint venture actually exists depends on the intention of the parties. Where evidence is in dispute the existence or nonexistence of a joint venture is a question of fact to be determined by the jury." *Unruh-Haxton*, *v. Regents of Univ. of Cal.*, 162 Cal.App.4th 343, 370 (2008) (internal citations omitted). "The rule has been fairly well established that each joint venturer has authority to bind the others in making contracts reasonably necessary to carry out the enterprise." *Medak v. Cox*, 12 Cal.App.3d 70, 76 n.2 (1970).

Here, Plaintiff has not adequately pled a joint venturer relationship between all named Defendants. Although Plaintiff is not required to explicitly use the words "joint venturer[s]" to allege such a relationship because whether a joint venture exists is a question of fact to be determined by the jury, portions of the language in the TAC characterize the relationship as an agency relationship. *Unruh-Haxton*, 162 Cal.App.4th at 370. For example, the TAC alleges that each of the Defendants "is . . . the agent, servant, and/or employee of each of the other DEFENDANTS, and that each DEFENDANT was acting within the course and scope of his, her, or its authority as the agent, servant, and/or employee of each of the other DEFENDANTS." [Id. at 5.]

Specifically, Plaintiff fails to allege Defendant Welk Music Group, Inc. and Soleil Communications, Inc. were joint venturers with the signatory to the contract. As to Defendant Welk Music Group, Inc., Plaintiff alleges it is "responsible for maintaining" the San Diego resort

1  property "in conjunction with other business entities."  As to Defendant Soleil Communications,
2  Inc., Plaintiff alleges it is "responsible for marketing" the San Diego resort property "in
3  conjunction with other business entities."  [Doc. No. 39 at 3-4.]  Plaintiff's TAC does not allege
4  Defendants Welk Music Group, Inc. and Soleil Communications, Inc. have joint control over the
5  venture, have an ownership interest in the venture, share in the profits of the undertaking, and have
6  an ownership interest in the enterprise.  *See Unruh-Haxton*, 162 Cal.App.4th at 370.  Despite the
7  current deficiencies, the allegations as currently pled do not suggest amendment would be futile.
8  *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

9        As to Defendant The Welk Group, Inc., the Court finds Plaintiff sufficiently alleged a joint
10  venturer relationship.  Plaintiff alleges Defendant The Welk Group, Inc. had joint control over the
11  venture as a "developer, contractor, builder and manager," and also an ownership interest and
12  sharing in the profits of the venture as a "manager and/or seller" of the vacation ownership
13  properties.  [Doc. No. 39 at 3.]

14        Therefore, the Court **DISMISSES without prejudice** Plaintiff's breach of contract claim
15  against Defendant Welk Music Group, Inc. and Defendant Soleil Communications, Inc.   The
16  Court declines to dismiss the breach of contract claim against Defendant The Welk Group, Inc.

17        2.    <u>Breach of Fiduciary Duty</u>

18        Defendants next contend Plaintiff's cause of action for breach of fiduciary duty must be
19  dismissed as to the Welk Group, Inc., Welk Music Group., Inc., and Soleil Communications, Inc.
20  because they are not signatories to the contract, and only parties to the contract may be found
21  liable for a tortious breach of the contract.  Defendants also contend the breach of fiduciary duty
22  claim should be dismissed as to the signatory to the contract, Defendant Welk Resort Group, Inc.
23  They contend that although Defendant Welk Resort Group, Inc. is a signatory, the fiduciary duties
24  set forth in the "Disclosure Regarding Real Estate Agency Relationship" ("2007 Disclosure")--a
25  document contained in the 2007 Agreement--ceased when Plaintiff upgraded his points interest
26  and signed the 2009 Agreement.

27        Where the obligation arises from a contract, only parties to the contract may be found
28  liable "for a tortious breach or for deceit in connection with the making of said contract."  *Clemens*

1  *v. American Warranty Corp.*, 193 Cal.App.3d 444, 452 (1987). Here, Plaintiff's source of alleged
2  fiduciary duty obligation arises from the 2007 Disclosure. As Plaintiff has not adequately alleged
3  Defendants Welk Music Group, Inc. and Soleil Communications, Inc. may be found liable on the
4  contract as joint venturers (*see supra* p.7-8), requiring dismissal of the breach of contract claim as
5  to them, so too must the breach of fiduciary duty claim against Defendants Welk Music Group,
6  Inc. and Soleil Communications, Inc. be dismissed.

7  As to Defendant Welk Resort Group, Inc. and Defendant The Welk Group, Inc., Plaintiff
8  has adequately alleged the breach of fiduciary duty claim. Defendant Welk Resort Group, Inc. is a
9  party to the contract and thus may be held liable for "tortious breach . . . of said contract," and
10 Defendant The Welk Group, Inc. may similarly be held liable a joint venturer. *Clemens*, 193
11 Cal.App.3d at 452.

12 Furthermore, the breach of fiduciary duty claim cannot be dismissed as to these defendants
13 because it is not clear that the fiduciary duties set forth in the 2007 Disclosure ceased. A court
14 may resolve contractual claims on a motion to dismiss if the terms of the contract are
15 unambiguous. However, "[w]here the language 'leaves doubt as to the parties' intent,' the contract
16 is ambiguous and the motion to dismiss must be denied." *Monaco v. Bear Stearns Residential*
17 *Mortg. Corp.*, 554 F.Supp.2d 1034, 1040 (C.D.Cal.2008) (quoting *Consul Ltd. v. Solide Enters.,*
18 *Inc.*, 802 F.2d 1143, 1149 (9th Cir.1986)).

19 Here, the Court cannot conclude that the terms of the parties' agreement are unambiguous.
20 Plaintiff argues the contract is ambiguous regarding whether the 2007 Agreement, including the
21 2007 Disclosure, is incorporated as part of the 2009 Agreement, and therefore the motion to
22 dismiss the breach of fiduciary duty claim must be denied. As support for his contention, Plaintiff
23 cites a term from a page in the 2009 Agreement – "(f) Additional Terms: P-73741" – that Plaintiff
24 claims refers to, and incorporates by reference, the 2007 Agreement. [Doc. No. 39-1 at 34.]
25 Although Defendants contend Plaintiff's interpretation of the term is based upon speculation, when
26 viewing the allegations in the light most favorable to Plaintiff, the term that allegedly refers and
27 incorporates the 2007 Agreement creates "doubts as to the parties' intent" to incorporate or
28 supersede the 2007 Agreement. *Id.*

Accordingly, the Court **DISMISSES without prejudice** Plaintiff's breach of fiduciary duty claim against Defendants Welk Music Group, Inc. and Defendant Soleil Communications, Inc. The Court declines to dismiss the breach of fiduciary duty claim against Defendant Welk Resort Group, Inc. and Defendant The Welk Group, Inc.

### 3. Private Nuisance

Defendants contend Plaintiff cannot state a claim for private nuisance because Plaintiff's time-share ownership rights do not include an interest in real property. They argue Plaintiff cannot demonstrate the requisite interference of enjoyment of real property for a private nuisance claim. *See Oliver v. AT&T Wireless Services*, 76 Cal.App.4th 521, 533 (1999) ("the essence of a private nuisance is its interference with the *use* and *enjoyment* of land." (emphasis in original) (citations omitted)); [Doc. No. 42 at 5].

In support of their argument, Defendants cite to Exhibit C, the Public Report issued by the Department of Real Estate for the Welk Resort Platinum Program. Defendants argue the Department of Real Estate is required under the "Vacation Ownership and Time-Share Act of 2004" to publish a public report once it determines a developer has completed registration and plan disclosure requirements.[1] CAL. BUS. & PROF. CODE § 11211 *et seq*. The Public Report for the Welk Resort Platinum Program describes the program as a "multi-location, points-based, time-share use plan with a nonspecific time-share interest" and includes the statement that "[o]wners do not receive an interest in real property." [Doc. No. 39-1 at 5.]

In response, Plaintiff argues the Purchase and Sales Agreement is ambiguous as to whether it creates real property rights or personal property rights. He contends the time-share ownership rights, based upon a membership program, created a real property interest in the nature of a lease. In support of his argument, Plaintiff cites a document which states, "Purchasers of Program Ownerships do not receive an interest in real property," and another document that refers to

---

[1]The Vacation Ownership and Time-Share Act provides for a "uniform and consistent method of regulation" of time-share plans in California. CAL. BUS. & PROF. CODE §11212(c). The Act consists of registration and sale requirements and fees (§11225 *et seq*.); time-share plan requirements (§11250 *et seq*.); management and governance (§11265 *et seq*.); and powers, investigation, and enforcement by the Real Estate Commissioner (§11280 *et seq*.).

1  Plaintiff's ownership interest as "real estate" and his contract as "your real property transaction."
2  [Id. at 11, 21.] Additionally, Plaintiff cites a California Court of Appeal case that held time-share
3  membership interests "constitute interests in real property" and "the nature of that interest is that
4  of a lease." *Cal-Am Corp. v. Dept. of Real Estate*, 104 Cal.App.3d 453, 457 (1980).

5        The Court finds Plaintiff's allegations for a private nuisance claim are sufficient to survive
6  a motion to dismiss. Under the applicable legal standard, the Court must accept all factual
7  allegations as true, and draw all reasonable inferences in favor of the nonmoving party. *See*
8  *Kneivel*, 393 F.3d at 1072. Here, Plaintiff alleges he purchased ownership in a time-share interest.
9  Plaintiff contends the ownership interest conferred a real property interest in the nature of a lease.
10 He alleges Defendants interfered with the peaceful and quiet enjoyment of the property by failing
11 to repair and maintain the Welk Resort. Defendants urge no real property interest was conferred,
12 particularly in light of Plaintiff's acknowledgment of reading and receiving a copy of the Public
13 Report issued pursuant to the Vacation Ownership and Time-Share Act. However, even taking
14 into consideration the Public Report's highly probative value of whether Plaintiff acquired a real
15 property interest, the Court cannot conclude the terms of Purchase and Sales Agreement are
16 unambiguous. Thus, to resolve the instant property interest issue on a motion to dismiss would be
17 improper at this stage. *See Monaco*, 554 F.Supp.2d at 1034.

18       Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claim for
19 private nuisance.

20       4.      <u>Breach of Implied Warranty of Habitability</u>

21       Defendants next contend Plaintiff's claim for breach of implied warranty of habitability
22 must be dismissed because Plaintiff pled an ownership interest, and the warranty of habitability is
23 limited to the tenant/landlord relationship.

24       "There is 'a common law implied warranty of habitability in residential leases in California
25 . . . .'" *Fairchild v. Park,* 90 Cal.App.4th 919, 924 (2001) (quoting *Green v. Superior Court*, 10
26 Cal.3d 616, 619 (1974)). A landlord has a "duty to maintain leased premises in a habitable
27 condition during the term of the lease." *Green*, 10 Cal.3d at 623. In addition to the common law
28 warranty of habitability, a landlord has a "statutory obligation under Civil Code section 1941 to

keep residential property in 'a condition fit for [human] occupation, and repair all subsequent dilapidations thereof." *Fairchild*, 90 Cal.App.4th at 925 (quoting CAL. CIVIL CODE § 1941).

Here, Plaintiff has pled he is an owner of a time-share property interest, and contends that the nature of the property ownership interest is that of a lease. Plaintiff further alleges Defendants breached the implied warranty of habitability by failing to maintain the Welk Resort San Diego property by, among other things, failing to cure defects that lead to increased moisture, odors, and mold, mildew, and fungus growth. [Doc. No. 39 at 9.] Due to the ambiguity in the Purchase and Sales Agreement (*see supra* p.11), the Court cannot conclude at this stage whether the interest sold by Defendants was a real property interest in the nature of a lease or a personal property interest consisting only of points. Viewing the allegations in favor of the non-moving party, Plaintiff has alleged a breach of implied warranty of habitability sufficient to survive a motion to dismiss.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's breach of implied warranty of habitability claim.

C.  *Motion for More Definite Statement*

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). A pleading is "vague" where it does not provide the opposing party with sufficient knowledge to fashion a responsive pleading. *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). "[E]ven though a complaint is not defective for failure to designate the statute or other provision of law violated, the judge may in his discretion, in response to a motion for more definite statement under Federal Rule of Civil Procedure 12(e), require such detail as may be appropriate in the particular case." *Id*. at 1179.

Here, the Court finds it appropriate for Plaintiff to provide additional detail regarding his ownership interest. At a minimum, Plaintiff shall re-plead his references to ownership of time-share units, because insofar as the references describe a particular physical location (e.g. Doc. No. 39 ¶¶ 16, 17), such description appears inaccurate. Plaintiff shall further amend the TAC by providing a complete description of the nature of his property interest.

Also, Plaintiff shall amend the TAC to provide a more definite statement regarding the

1  "Purchase and Sales Agreement." Although Plaintiff's opposition papers contain some information
2  as to which documents he alleges comprise the "Purchase and Sales Agreement," such information
3  is not found within the TAC itself. Thus, Plaintiff shall specify which page numbers comprise the
4  2007 Agreement, which page numbers comprise the 2009 Agreement, and which document page
5  numbers comprise the entirety of the alleged Purchase and Sales Agreement.

6  D.     *Motion to Strike*

7       Federal Rule of Civil Procedure 12(f) empowers a court to strike from any pleading "any
8  redundant, immaterial, impertinent, or scandalous matter." Motions to strike may be granted if "it
9  is clear that the matter to be stricken could have no possible bearing on the subject matter of the
10 litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992). The
11 function of a motion to strike is "to avoid the expenditure of time and money" associated with
12 litigating "spurious issues." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983).
13 "'Immaterial' matter is that which has no essential or important relationship to the claim for relief
14 or the defenses being pleaded. 'Impertinent' matter consists of statements that do not pertain, and
15 are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th
16 Cir.1993) (internal citation omitted) (overruled on other grounds, *Fogerty v. Fantasy, Inc.*, 510 U.S.
17 517 (1994)).

18      Defendants move to strike portions of Plaintiffs' TAC on grounds that his allegations related
19 to real property, real estate, and units are improper. Defendants further move to strike portions of
20 Plaintiff's unfair competition law claim and breach of implied warranty of habitability claim as
21 immaterial and impertinent. [Doc. No. 47.]

22      1.     <u>References to Unit Ownership and Statements of Ownership Interest</u>

23      Defendants ask this Court to strike Plaintiff's references to "time-share units" because they
24 are immaterial and impertinent. Plaintiff contends Defendants mis-characterize his allegations
25 regarding "time-share units" as a method in which to strike pertinent factual allegations. Here,
26 Defendants contend that they can only sell "non-specific time-share interests" in a "multiple-site
27 time-share plan," and therefore Plaintiff acquired no real property interest. Thus, Defendants
28 argue, Plaintiff's references to ownership of "time-share units" should be stricken. [Doc. No. 55.]

1   As the Purchase and Sales Agreement is ambiguous regarding the type of property interest
2   Plaintiff acquired (*see supra* p.12), Plaintiff's allegations that he acquired a type of property
3   interest in "time-share units" cannot be said to have "no essential or important relationship to the
4   claim for relief," nor are the statements "not necessary . . . to the issues in question." *Fantasy*,
5   *Inc.*, 984 F.2d at 1527.  Under this same line of reasoning, Plaintiff's ownership interest statements
6   similarly are not immaterial nor impertinent.  Rather, the Court finds Plaintiff's statements
7   regarding time-share interest are more appropriately addressed by directing Plaintiff to provide for
8   a more definite statement of his interests (*see supra* pp. 12-13).

9   Accordingly, the Court **DENIES** Defendants' motion to strike Plaintiff's references to unit
10  ownership and statements characterizing his ownership interest.

11  2.   <u>References to Disclosure Regarding Real Estate Agency Relationship</u>

12  Defendants next contend that any fiduciary duty arising from the 2007 Disclosure ceased
13  when Plaintiff upgraded his ownership interest and signed the 2009 Agreement.  Defendants
14  request the Court to strike Plaintiff's statement "Defendants failed to honor the following
15  representations in their Purchase and Sales (sic) Agreement."  [Doc. No. 39 ¶ 25.]

16  The Court has found that "doubts exist" regarding whether the 2009 Agreement superseded
17  the 2007 Agreement (*see supra* pp. 9), and thus cannot conclude at this early stage of the
18  proceedings the duty arising from the 2007 Disclosure ceased upon Plaintiff's upgrade in 2009.
19  Accordingly, the Court **DENIES** Defendant's motion to strike the statement referring to the duty
20  arising from the 2007 Disclosure.

21  3.   <u>Claim for Violation of California Unfair Competition Law (CAL. BUS. & PROF.</u>
22  <u>CODE § 17200, *et seq.*) based upon Toxic Mold Protection Act Claim</u>

23  Defendants contend Plaintiff's claim alleging violation of the California Unfair
24  Competition law ("UCL"), insofar as it is based upon the Toxic Mold Protection Act, should be
25  stricken because no toxic mold standards have been adopted by the California Department of
26  Public Health to determine a statutory violation.  [Doc. No. 47 at 5-6.]  Plaintiff argues it has
27  adequately alleged a UCL claim based upon the Toxic Mold Protection Act because "the unlawful
28  prong of the UCL makes a violation of an underlying law a *per se* violation."  [Doc. No. 51 at 5.]

1  Thus, Plaintiff argues, a UCL claim may be brought to correct business practices even if the
2  alleged violations of the underlying law are not "independently enforceable" and "even if the law
3  at issue has never been codified." [Id. at 6.] Plaintiff argues he alleged a UCL claim under the
4  unfair prong because "[u]nder the unfair prong a business practice can violate the UCL even if it
5  does not violate some other law." [Id. at 5.]

6        "California's UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and
7  unfair, deceptive, untrue or misleading advertising.'" *Stearn v. Select Comfort Retail Corp.*, 2009
8  WL 4723366 * 12 (N.D.Cal. Dec. 4, 2009) (quoting CAL. BUS. & PROF. CODE § 17200). "Because
9  Bus. & Prof. Code, § 17200, is written in the disjunctive, it establishes three varieties of unfair
10 competition-acts or practices that are unlawful, or unfair, or fraudulent." *Cel-Tech*
11 *Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).

12       a.    <u>Unlawful Business Practices</u>

13       Under the "unlawful" prong, "for an action based upon an allegedly unlawful business
14 practice, the UCL 'borrows violations of other laws and treats them as unlawful practices that the
15 unfair competition law makes independently actionable.'" *Id.*, quoting *Cel-Tech*, 20 Cal.4th at 180.
16 Thus, "a violation of another law is a predicate for stating a cause of action under the UCL's
17 unlawful prong." *Berryman v. Merit Property Management, Inc.,* 152 Cal.App.4th 1544, 1554
18 (2007).

19       Here, Plaintiff cannot state a UCL claim for unlawful business practices based on the Toxic
20 Mold Protection Act because he cannot allege how Defendants violated mold standards when no
21 standards have been adopted to violate. The California Toxic Mold Protection Act requires the
22 Department of Health Services to adopt, if feasible, permissible exposure limits to molds in indoor
23 environments, standards to assess the health risks created by mold, mold identification guidelines,
24 and to develop remediation guidelines. CAL. HEALTH & SAFETY CODE § 26100 *et seq*. The Act
25 also expressly states that the duties and disclosure requirements do not apply until at least six
26 months after such standards have been adopted. In 2008, the Department of Public Health
27 Services issued an implementation update, stating that "science-based [permissible exposure
28 limits] cannot be established at this time." [Doc. No. 42-3, "Exhibit A".] The Barclays Official

California Code of Regulations confirms that no science-based mold exposure limit standards have been adopted. [Id., "Exhibit B".]

Also, Plaintiff's allegation that a claim under the UCL for unlawful business practices may be brought even if the law at issue has never been codified, is unpersuasive. The authority Plaintiff cites for this proposition, *Bondanza v. Penninsula Hospital*, 23 Cal.3d 260 (1979), did not find a UCL claim for unlawful business practices may be based upon a law that was not codified. *See Dey v. Continental Central Credit*, 170 Cal.App.4th 721, 727 (2008) ("In *Bondanza* . . . the predicate act on which the UCL violation was based was Civil Code section 1671.2, which prohibits a contract in which the amount of damages is set in advance unless 'it would be impracticable or extremely difficult to fix the actual damage.'"). That is, in *Bondanza*, the statute underlying the plaintiff's claim contained operative standards for determining a statutory violation. *Id.* Indeed, where no statutory violation occurs to serve as the predicate unlawful business practice, courts dismiss the UCL claim. *See In re Vaccine Cases*, 134 Cal.App.4th 438, 459 (2005) (affirming trial court's sustaining of demurrer without leave to amend where "no statutory violation remained to provide the 'unlawful' business act or practice necessary [for the UCL claim]"). Consequently, Plaintiff cannot assert a UCL claim for unlawful business practices based upon alleged Toxic Mold Protection Act violations.

b.  Unfair Business Practices

Plaintiff argues the Toxic Mold Protection Act references need not be stricken because he sufficiently alleged a UCL claim under the second prong for unfair business practices. In his TAC, Plaintiff alleges Defendants engaged in unfair business acts because they failed to disclose to consumers that the time share units had leaks, water intrusion, mold, mildew, and fungus. Plaintiff alleges Defendants' failure to disclose the time-share unit conditions allowed them to "unfairly compete" with other time-share vacation resorts. Plaintiff explains that "had DEFENDANTS honestly disclosed their practices, consumers, including PLAINTIFF and the PLAINTIFF CLASS, would have had the opportunity to freely choose another time share vacation resort." [Doc. No. 39 at 17.]

The definition for the term "unfair" in a UCL claim for unfair business practices consumer

action is uncertain. *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal.App.4th 1235, 1254 (2009). "Before 1999, some courts of appeal held that 'an unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' while others held that the determination whether a practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.'" *Id.* (internal citations omitted).

In 1999, the California Supreme Court defined "unfair" in the context of a UCL competitor action, stating "any finding of unfairness to competitors under [the UCL must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal.4th at 186-87. The California Supreme Court left open the question as to the definition of "unfair" as applied in a UCL consumer action. Subsequent courts of appeal decisions are split as to which definition to apply: some courts of appeal have applied the *Cel-Tech* definition of "unfair" to consumer actions, while others have applied the definition used prior to 1999. *See Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1363 (2010).

Here, Plaintiff's argument that he sufficiently alleged a claim for unfair business practices does not provide support for his position that the Toxic Mold Protection Act allegations should not be stricken. Plaintiff's UCL claim for unfair business practices is complete without reference to the Toxic Mold Protection Act. First, under the "unfair" definition created prior to the *Cel-Tech* decision, Defendants' alleged practice of failing to disclose the mold, mildew, and fungus conditions to consumers could be found "immoral, unethical, oppressive, unscrupulous or substantially injurious" to Plaintiff. *Morgan*, 177 Cal.App.4th at 1254. The alleged failure to disclose such conditions hindered Plaintiff's ability to make a fully informed decision to supply patronage to any particular resort. Plaintiff further alleges the injurious impact on himself and other consumers is substantial when balanced against Defendants' motives for failing to disclose the conditions in order to obtain higher profit. Under this prior standard, Plaintiff's Toxic Mold Protection Act allegations are unnecessary and immaterial to establishing his unfairness claim because the standard does not require the business practice be "specifically proscribed by some

1   other law." *Cel-Tech*, 20 Cal.4th at 180.

2   Second, under the unfair definition as provided in *Cel-Tech*, Plaintiff's allegations are
3   sufficient without reference to the Toxic Mold Protection Act because any finding of unfairness
4   could be "tethered" to the alleged statutory violations pertaining to real property disclosure
5   requirements (*see infra* p.18), and the California Civil Code sections Defendants did not move to
6   strike. *Cel-Tech*, 20 Cal.4th at 186-87; [*see* Doc. No. 39 at 16-17]. Moreover, even if Plaintiff
7   argued the Toxic Mold Protection Act allegations should not be stricken because a finding of
8   unfairness could be tethered to the Act, the Court would find such argument unconvincing.
9   Plaintiff would not be able to show Defendants' conduct threatens a "violation [of the law] or
10  violates the policy or spirit of one of those laws because its effects are comparable to or the same
11  as a violation of the law," because no mold standards have been promulgated. *Cel-Tech*, 20 Cal.
12  4th at 186-87. Thus, under either definition of unfairness, Plaintiff sufficiently alleged a UCL
13  claim for unfair business practices, and the references to the Toxic Mold Protection Act are not
14  essential nor "necessary to the issue[] in question." *Fantasy, Inc.*, 984 F.2d at 1527.

15  Accordingly, the Court **GRANTS** Defendants' motion to strike Plaintiff's Toxic Mold
16  Protection Act allegations at lines 15-25 of page 16 of the TAC. The motion to strike the Toxic
17  Mold Protection Act allegations is granted **without leave to amend** because Plaintiff cannot cure
18  the deficiency that the Act is without standards to determine a statutory violation.

19  5.   <u>Claim for Violation of California Unfair Competition Law based upon Real</u>
20  <u>Property Disclosure Requirements</u>

21  Defendants also seek to strike portions of Plaintiff's UCL claim that refer to real property
22  disclosure obligations on grounds that Plaintiff does not own an interest in real property. As the
23  Court has found that doubts exist regarding the type of property interest Plaintiff acquired under
24  the Purchase and Sales Agreement (*see supra* p.11-12), Plaintiff's alleged violations of disclosure
25  obligations related to real property interests cannot be said to be immaterial or impertinent.

26  Accordingly, the Court **DENIES** Defendants' motion to strike Plaintiff's alleged violations
27  of disclosure requirements applicable to brokers or sellers of real property interests.

28  6.   <u>Claim for Breach of the Implied Warranty of Habitability</u>

Defendants seek to strike Plaintiff's sixth claim for breach of implied warranty of habitability in its entirety. Defendants rest their argument on the same ground as stated in their motion to dismiss Plaintiff' sixth claim; that because Plaintiff is the owner of points in a membership program, he cannot assert a claim afforded only to tenants. As the Court's analysis and conclusion has determined Plaintiff's claim for breach of implied warranty of habitability shall not be dismissed (*see supra* p. 11-12), so too shall the claim not be stricken in its entirety. Accordingly, the Court **DENIES** Defendants' motion to strike Plaintiff's claim for breach of implied warranty of habitability.

## CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss, and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to strike. Plaintiff may file an amended complaint addressing the deficiencies as noted above within ***21 days***  from the date of this Order. Defendants shall answer or otherwise respond to the amended complaint in accordance with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

DATED: January 11, 2011

Hon. Michael M. Anello
United States District Judge