UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERMENEGILDO ("JAY") MARTINEZ, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>THE WELK GROUP, Inc.; WELK RESORT GROUP Inc.; WELK MUSIC GROUP, Inc.; SOLEIL COMMUNICATIONS, Inc.; and DOES 1 through 25,<br><br>　　　　　　　Defendants. | Civil No. 09cv2883 AJB<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[Doc. 81] |

　　　　Presently before the Court is Defendants' Motion to Compel Arbitration and Stay This Action Under the Federal Arbitration Act. (Doc. 81.) For the reasons set forth below, the Court **DENIES** the motion.

**I.**

**BACKGROUND**

　　　　This matter is a putative class action brought by Plaintiff Martinez on behalf of a class of timeshare interest owners, alleging that Defendants failed to abate and disclose the presence of mold at the Welk Resort San Diego (the "Resort").

　　　　Plaintiff initially purchased 120,000 Platinum Points from Welk Resort Group, Inc. ("WRGI") in 2007, which provided him with the opportunity to stay at Welk resorts around the world or at any other

time-share resort that accepts Platinum Points for vacation stays. Plaintiff then "upgraded" his 2007 Platinum Points interest in April 2009 to 240,000 Platinum Points. (Fourth Amended Complaint filed Feb. 1, 2011 ("4AC"), ¶ 23; Exhibit A to the 4AC, p. 24; Exhibit B to the 4AC, p. 54.) Both the 2007 Agreement and the 2009 Agreement contain arbitration clauses, requiring the parties to submit any dispute arising from the Agreements to binding arbitration. (Exhibit A to the 4AC, pp. 30-31 of 83; Exhibit B to the 4AC, pp. 60-61.)

This lawsuit was filed in San Diego Superior Court in November 2009. In December 2009, Defendants removed it to this Court. The parties then met and conferred for many months. The lengthy meet and confer process resulted in the filing of three different amended complaints by September 2010. At that time, Defendants again chose this forum to litigate their disputes with a former employee, Mr. Wade Brent, and filed counterclaims against him.

Following Defendants' two motions to dismiss, the parties finally achieved an operative complaint in June 2011, after the Court denied Defendants' motion to dismiss the 4AC and granted their motion to strike. (Doc. 70.) In August 2011, Defendants filed a preemptive motion to deny class certification. (Doc. 74.) The Court denied the motion *sua sponte*, finding it to be premature, since Plaintiff had not yet moved for class certification and discovery had not yet been conducted. (Doc. 78.) Shortly thereafter, Defendants filed the instant motion to compel arbitration on October 31, 2011. Defendants move this Court to compel arbitration of Plaintiff's claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.

## II.

## LEGAL STANDARDS

**A.    FAA Standard**

The FAA applies to any contract evidencing a transaction involving interstate commerce. 9 U.S.C. § 2. It requires a district court to stay judicial proceedings and compel arbitration of claims governed by a valid and enforceable arbitration agreement. 9 U.S.C. § 3. In deciding whether to compel arbitration under the FAA, the district court need only determine whether: (1) there is an agreement between the parties to arbitrate; (2) the claims at issue fall within the scope of the agreement; and (3) the agreement is valid and enforceable. *Valle v. Lowe's HIW, Inc.*, 2011 U.S. Dist. LEXIS 93639, *8 (N.D.

1 Cal. Aug. 22, 2011). If these three factors are met, the court must enforce the arbitration agreement
2 according to its precise terms. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("The
3 FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district
4 courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has
5 been signed."); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (courts must
6 enforce arbitration agreements according to their terms).

7 While generally applicable defenses to contract such as fraud, duress, or unconscionability
8 invalidate arbitration agreements, the FAA preempts state-law defenses that apply only to arbitration or
9 that derive their meaning from the fact that an agreement to arbitrate is at issue. *AT&T Mobility*, 131 S.
10 Ct. at 1745-47.  Because of the strong policy favoring arbitration, doubts are to be resolved in favor of
11 the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S.
12 1, 24 (1983).

13 **B.     Waiver Standard**

14 Even in the face of a valid arbitration clause, a party may waive its right to compel arbitration.
15 To prove a waiver of a right to arbitrate, the party asserting the waiver must show that the party seeking
16 to compel arbitration (1) had knowledge of an existing right to compel arbitration, (2) has acted
17 inconsistently with that existing right, and (3) has caused prejudice to the other side in so doing. *See,*
18 *e.g.*, *Plows v. Rockwell Collins, Inc.*, 2011 WL 3501872, *2 (C.D. Cal., Aug. 2011).

19 **III.**
20 **DISCUSSION**

21 Defendants request that the Court compel arbitration of (1) Plaintiff's individual claims on the
22 first, second, fifth, and sixth causes of action, and (2) Defendants' counterclaim against Mr. Brent. They
23 also request that the Court stay the entire action pending completion of the arbitration.

24 As explained below, the Court finds that the parties' agreements contain valid arbitration clauses
25 that are enforceable under the FAA. In the Court's view, however, the determinative issue here is
26 whether Defendants have nonetheless waived their right to compel arbitration by waiting to bring this
27 motion until two years into the litigation.
28 //

### 1. The Arbitration Clauses are Valid and Enforceable Under the FAA

In their briefing, the parties first argue whether the FAA applies to the agreements at issue and, if so, whether the arbitration clauses are valid and enforceable under the FAA. The Court agrees with Defendants that the FAA applies to the agreements at issue because they fall under the FAA's broad standard for interstate commerce.[1] Plaintiff signed the 2007 and 2009 Agreements in connection with his purchase and upgrade of Platinum Points, which provided him with the opportunity to stay at Welk resorts *around the world* or at any other time-share resort that accepts Platinum Points for vacation stays. In the aggregate, the purchase and sale of timeshare points for use in a multi-state resort accommodation program involves interstate commerce. The FAA therefore applies, even if Plaintiff never stayed at any Welk Resort outside of California.

The Court further finds that Defendants have satisfied the three-prong standard for compelling arbitration with regard to Plaintiff's individual claims:

1. There is an agreement between the parties to arbitrate. The arbitration clauses at issue broadly encompass "any dispute between the parties arising from the Agreement."
2. At least some of the claims at issue (namely, the first, second, and sixth causes of action) fall within the scope of the Agreements.[2]
3. Absent any indication of unconscionability, the agreements are enforceable.[3]

Similarly, the Court finds that the three prongs have been satisfied as to Defendants' counter-claim against Mr. Brent. By signing the alternative dispute resolution ("ADR") agreement during his

---

[1] The scope of the FAA is interpreted broadly to include any transaction affecting interstate commerce. *Allied-Bruce Terminix Cos. V. Dobson*, 513U.S. 265, 273-74 (1995). Thus, even where the transaction is entered into between residents of the same state and consummated in that state, the FAA applies if the economic activity in question, in the aggregate, is "within the flow of interstate commerce." *Legacy Wireless Servs. v Human Capital*, L.L.C., 314 F. Supp. 2d 1045, 1052 (D.C. Or. 2004) (quoting *Citizens Bank v. Alafabco, Inc.*, 123 S. Ct. 2037, 2040 (2003)).

[2] The Court is not convinced that the fifth cause of action for unfair competition falls within the scope of the Agreements, since it is based on Defendants' deceptive business practices at the Welk Resort San Diego, not their breach of duties under the Purchases Agreements. For example, Defendants are allegedly liable as a result of their violations of Cal. Civ. Code §§1710 (fraudulently suppressing information about mold) and 1929 (failure to repair)—both of which are independent of Plaintiff's Purchase Agreements. *See* FAC ¶55.e.

[3] An agreement may be found unconscionable, and thus unenforceable, where the terms are "overly harsh" or "one-sided." *AT&T Mobility*, 131 S. Ct. at 1746. Here, the Court finds that the Agreements contain all the hallmarks of substantive conscionability.

employment, Mr. Brent agreed to all provisions in Defendants' ADR policy, including that "final and binding arbitration, if requested by [Mr. Brent] or the Company, shall be the exclusive means of resolving all disputes regarding, relating to, or arising in connection with [Mr. Brent's] employment with the Company or the termination of such employment." (Exhibit 1 to Fortin Decl., p. 9 of 11; Fortin Decl., ¶ 4.)

Therefore, with regard to at least some of the claims at issue, the Court finds the arbitration clauses to be valid and enforceable under the FAA. However, as explained below, Defendants' motion nonetheless fails due to waiver.

**2.      Defendants Have Waived Their Right to Compel Arbitration**

Plaintiff argues that Defendants have waived their right to compel arbitration.[4] Specifically, Plaintiff asserts that the three-prong standard for waiver has been met. First, Defendants had knowledge of their right to compel binding arbitration since November 2009. Since Defendants drafted Plaintiff's Purchase Agreements containing the arbitration clauses, it is indisputable that they knew of their right to seek arbitration. *See Plows*, 2011 WL 3501782 at *2.

Second, Plaintiff claims Defendants have acted inconsistently with their right to arbitration by pursuing litigation for two years, and by seeking to compel arbitration only after receiving an "unwelcome" order from this Court.[5] Availing one's self of the court system is inconsistent with a demand for arbitration. *See Van Ness Townhouses vs. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (actively litigating the case for two years was inconsistent with the agreement to arbitrate such claims). Here, there is no question that Defendants actively participated in the litigation—filing two motions to dismiss and a counterclaim, and participating in a lengthy meet and confer process. Yet throughout this time, they made no mention of arbitration.

---

[4] Plaintiff also questions Defendants' motives in bringing this motion to compel arbitration more than two years into the litigation, suggesting that Defendants filed this only because they received an "unwelcome" ruling from the Court on their motion to deny class certification.

[5] Courts look at a variety of factors in making a determination as to whether a defendant's actions are inconsistent, including how many months or years the parties have engaged in litigation prior to the party moving to compel arbitration; whether significant motion practice and/or discovery has taken place; whether the party sought a judicial ruling on the merits; and whether the party invoked its arbitration clause only after receiving an "unwelcome" ruling from a court. *St. Agnes Med. Ctr. v. PacificCare of Calif.*, 31 Cal. 4th 19, 30-31 (2003).

Third, having litigated this case for two years, Plaintiff asserts he will be prejudiced if forced into arbitration. He has strategized and made choices based on proceeding with this case as a class action in federal court. He has also compiled two years' worth of time and expenses that would not have been necessary had he known the case would proceed to arbitration. The Court recognizes that the putative class members have also suffered by this passage of time.

In response, Defendants contend that they only recently gained the right to compel arbitration, since in 2009, the case initially identified three proposed classes, two of which would not have been subject to arbitration. As a result, they claim any motion to compel arbitration would have been futile. The Court does not agree. At any time, Defendants could have brought a limited motion to compel arbitration of those individual claims and parties to which and to whom arbitration was applicable—essentially the same motion brought at this time. Defendants make much of *AT&T Mobility*, decided in 2011, but that case dealt with the enforceability of class action waivers, which are not present in the arbitration clauses at issue.[6] Here, by contrast, Defendants seek arbitration of Mr. Martinez's claims on an ***individual***, rather than classwide, basis. Defendants have not shown why case law regarding class arbitration has any bearing on the ability to compel arbitration of individual claims.[7] In sum, the Court is not convinced that Defendants were somehow barred from pursuing arbitration with Mr. Martinez on his individual claims prior to 2011. Then, as now, the lawsuit was a mixed bag of arbitrable and non-arbitrable claims. By waiting two years to bring this motion, the prejudice caused to Mr. Martinez and the putative class is enough to create waiver.

---

[6] Indeed, in much of their briefing, Defendants emphasize that the agreements at issue were silent as to class claims or procedures, and that Plaintiff must therefore arbitrate his claims on an individual basis only. It would seem incongruous for Defendants to ignore that critical distinction in this context.

[7] Defendants claim that prior to 2011, "some courts . . . continued to refuse to compel individual arbitration of class claims." (Def. Reply Brief at 5.) They cite to *McArdle v. AT&T Mobility LLC*, 2010 U.S. Dist. LEXIS 54621 *3 (N.D. Cal. May 10, 2010). However, that case too dealt with the unconscionability of an agreement's prohibition on class arbitration. Because the prohibition was not severable from the rest of the arbitration provision, the Court had deemed the entire provision unenforceable. That clearly is not the issue here, since, again, these agreements make no mention of class arbitration. Regardless, Defendants' use of "some courts" would seem to indicate that this was not a rule every court would have imposed—further undercutting their position that any previous attempt to compel arbitration would have been futile.

The Court concludes that by actively proceeding with litigation for two years while fully aware of these arbitration clauses, Defendants have waived their right to compel arbitration.[8] The purpose of the FAA, and arbitration in general, is to promote quick, informal, and streamlined resolution of issues between parties. *AT&T Mobility*, 131 S.Ct. at 1749. It is not to be used as a back-up plan for litigation strategies. Compelling arbitration at this late stage would seem to defeat its purpose, and the Court therefore **DENIES** Defendants' motion.

## IV.
## CONFLICT OF INTEREST

As a separate issue, Defendants previously filed their motion to deny class certification based on an alleged conflict of interest among Plaintiffs' and Counter-Defendant's counsel. As noted above, the Court denied the motion without prejudice as premature, since Plaintiff had not yet filed his motion for class certification, and discovery had not been conducted. The Court also notes that although adequacy of representation may be considered in the class certification analysis, it is but one of four factors under Rule 23(a).[9] Here, by contrast, Defendants' entire motion dealt solely with the alleged conflict of interest and addressed none of the other requirements—hardly constituting a complete certification analysis. Indeed, the case on which Defendants relied, *McCauley v. Family Dollar Inc.*, 2010 U.S. Dist. LEXIS 116636, * 1 (W.D. Ky. 2010), was brought as a ***motion to disqualify counsel***, not a motion to deny class certification. Defendants' motion was therefore neither timely nor appropriately brought as a motion to deny class certification.

It is unclear why Defendants attempted to frame what was effectively a motion to disqualify counsel as a motion to deny class certification. In the Court's view, the proper remedy for such a

---

[8] With regard to Defendants' counterclaim against Mr. Brent, Defendants have waived their right to arbitration for an additional reason. As Plaintiff points out, Defendants failed to comply with certain pre-arbitration terms and procedures set out in the ADR policy, a violation which "shall constitute a waiver of all rights to raise or present any claims in any forum." Moreover, by filing the counterclaim against Mr. Brent in this Court, Defendants are in further violation of their ADR policy, which requires all employment disputes to be resolved through final and binding arbitration "and not by way of court or jury trial."

[9] The four Rule 23(a) requirements are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Additionally, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 462 (9th Cir. 2000).

conflict would be to disqualify the relevant counsel, not preemptively deny the class altogether. In any event, both the Court and the parties would like to see the alleged conflict of interest resolved. To that end, Defendants are encouraged to file a motion to disqualify counsel as the proper means of resolving this issue.

## V.
## CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' motion to compel arbitration. With regard to the alleged conflict of interest, Defendants (if they so choose) must file their motion to disqualify counsel within 30 days of this Order.

**IT IS SO ORDERED.**

DATED: January 12, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge