UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HERMENEGILDO ("JAY") MARTINEZ, an individual, on his own behalf and on behalf of all others similarly situated, | ) ) ) | Civil No. 09cv2883 AJB |
| Plaintiff, | ) ) ) | **ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | ) ) ) | |
| THE WELK GROUP, Inc.; WELK RESORT GROUP Inc.; WELK MUSIC GROUP, Inc.; SOLEIL COMMUNICATIONS, Inc.; and DOES 1 through 25, | ) ) ) ) | [Doc. 116] |
| Defendants. | ) ) ) | |

Presently before the Court is Plaintiff's motion for class certification. (Doc. 116.) The Court held a hearing on the motion on Friday, July 6, 2012. For the reasons set forth below, the Court **DENIES** the motion.

## I.

## BACKGROUND

This matter is a putative class action brought by Plaintiff Martinez on behalf of a class of timeshare interest owners, alleging that Defendants failed to abate and disclose the presence of mold at the Welk Resort San Diego (the "Resort").

Plaintiff initially purchased 120,000 Platinum Points from Welk Resort Group, Inc. ("Welk") in 2007, which provided him with the opportunity to stay at Welk resorts around the world or at any other

1

time-share resort that accepts Platinum Points for vacation stays. Plaintiff then "upgraded" his 2007 Platinum Points interest in April 2009 to 240,000 Platinum Points. (Fourth Amended Complaint, filed Feb. 1, 2011 ("4AC"), ¶ 23; Exhibit A to the 4AC, p. 24; Exhibit B to the 4AC, p. 54.) At some point during the sales process, Martinez asked Welk if the Resort were safe for his son (who previously had cancer and needed a clean environment), and the sales agent assured him the Resort was clean. (*See* Warren Decl., Exh. 5, pp. 36:20-37:12, 247:25-248:5.)

During a visit to the Resort in 2009, Martinez notified the front desk that his room smelled musty. Welk sent a housekeeper, who cleaned a sink, which apparently fixed the problem. (*See id.* at 102:9-105:6, 123:7-22.) Martinez later went looking for fishing bait in an outside utility closet (thinking it to be a cool, damp location), where he found something that may have been mold, but he could not be certain. In any event, the closet was not part of the Resort's living spaces. (*See id.* at 110:4-113:5; Exh. 2, p. 12:3-5.)

After Martinez stayed at the Resort in 2009, his neighbor (a former Welk employee) told him that there was mold at the Resort. This story troubled Martinez because he believed that if mold existed in one unit at the Resort, all 650 units in the 500-acre Welk complex would be uninhabitable, even if the mold were removed. (*See* Warren Decl., Exh. 5, p. 224:8-14.)

Martinez decided that he would never use his points again—either at Welk or any other timeshare resort. Consequently, he claims they have diminished in value.  (*See id.* at 139:7-16, 208:23-209:5; Exh. 4, p. 3:24-26; Exh. 1, p. 12:3-27; Exh. 3, p. 8:12-9:24.) He thus sued Welk for breach of contract, breach of fiduciary duty, negligence, nuisance, breach of the implied warranty of habitability, and for violations of California's Unfair Competition Law (UCL). Martinez now seeks to certify these claims on behalf of all Welk Platinum Points owners.

The class Plaintiff seeks to have certified is defined as all persons who owned a time-share interest in the Welk Resorts Platinum Program at any time within four years of the filing of the complaint in this matter. Martinez argues that this case warrants class treatment because (1) all Platinum Point owners signed the same contracts; (2) Welk had an obligation to disclose the alleged mold problems to points owners, but failed to do so; and (3) points are fungible, so anything that diminishes the value of points harms all owners. (Pl. Mot. for Class Cert. at 1.)

## II.

### LEGAL STANDARD

"The class action is 'an exception' to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (citation omitted). "Class action certifications to encourage compliance with consumer protection laws are 'desirable and should be encouraged.'" *Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) (citations omitted); *see Abels v. JBC Legal Grp.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005) (class action is superior when "[m]any plaintiffs may not know their rights are being violated") (citation omitted).

To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—*and* falls within one of the three categories of Rule 23(b). *Ellis*, 657 F.3d at 979-80. This case involves Rule 23(b)(3), which authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with Rule 23(a) requirements." *Ellis*, 657 F.3d at 981. Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." *Id.* at 983 n.8; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims."). When the court must determine the merits of an individual claim to determine who is a member of the class, then class treatment is not appropriate. *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672-73 (N.D. Cal. 2011); 5 James W. Moore,

1  *Moore's Fed. Practice* § 23.21[3][c] (2011). "The amount of damages is invariably an individual

2  question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th

3  Cir. 1975); *Stearns v. TicketMaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (citing *Blackie* in

4  a case decided after the *Wal-Mart* and *Ellis* decisions).

5  ### III.

6  ### DISCUSSION

7  As explained below, the Court finds that Martinez has not satisfied the standards set forth in

8  Rule 23(a) and Rule 23(b)(3). Specifically, he fails the Rule 23(a) typicality requirement, and individual

9  issues predominate under Rule 23(b)(3).

10  **A.    Rule 23(a)**

11  Rule 23(a) enumerates four prerequisites for class certification, referred to as (1) numerosity, (2)

12  commonality, (3) typicality, and (4) adequacy.

13  *1.    Numerosity*

14  Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

15  impracticable." Here, it clearly would be difficult or inconvenient to join all members of the proposed

16  class. According to Martinez, Welk has admitted that the number of individuals in the putative class is

17  approximately 43,000. Given this number, it is reasonable to assume that this requirement is satisfied.

18  *See Charlebois v. Angels Baseball*, *LP*, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011) ("Where the

19  exact size of the class is unknown but general knowledge and common sense indicate that it is large, the

20  numerosity requirement is satisfied.").

21  *2.    Commonality*

22  Rule 23(a)(2) requires questions of law or fact common to the class. According to Martinez, the

23  adjudication of the same core questions of fact and law will resolve all of the class members' claims.

24  Because this issue overlaps with the Rule 23(b)(3) predominance analysis, and Welk focuses its

25  argument there, the Court addresses it below.

26  *3.    Typicality*

27  Typicality requires that the claims or defenses of the representative parties be typical of the

28  claims or defenses of the class. Fed. Civ. P. 23(a)(3). Martinez asserts that his claims are typical

1   because they are reasonably coextensive with those of the absent class members. Like every other

2   proposed class member, Martinez owned time-share points in the Welk Resorts Platinum Program. And

3   like them, Martinez lost value because Welk concealed the mold issues.

4        Welk responds that Martinez's claims and defenses are not typical of the claims or defenses of

5   the class. Martinez is hypersensitive to and harbors an acute fear of mold. This is certainly understand-

6   able in light of his son's unfortunate illness, but his unique background and beliefs would seem to make

7   him atypical of the class he seeks to represent. Other class members may not have his same views on

8   mold, especially his unusual view that any unit in the Resort would be unsafe—even following

9   remediation—if one unit had mold. Welk cites depositions of numerous other guests who enjoy the

10  Resort facilities and believe they are well maintained. Indeed, although more than 130,000 guests stay at

11  the Resort each year, Welk is aware of fewer than fifteen complaints regarding mold during the last

12  eight years. (*See* Ellis Decl. ¶ 6.)

13       At the hearing, Plaintiff's counsel argued that Martinez's personal views about mold are not

14  relevant; rather, what matters is Welk's alleged misconduct. Even if that were true, Welk asserts at least

15  two additional reasons that Martinez is atypical, fully independent of his opinions about mold. First,

16  Martinez is atypical because his contract claim is based on a superseded contract. Martinez signed two

17  contracts with Welk, and the 2009 contract expressly supersedes the 2007 contract. However, Marti-

18  nez's breach of contract and fiduciary duty claims are allegedly based on the 2007 contract. Moreover,

19  the fact that Martinez has two separate contracts raises defenses unique to him. Second, Martinez's

20  failure to pay his annual dues makes him atypical. Platinum Points owners must pay a yearly assess-

21  ment, and failure to do so puts the owner in default and prevents the owner from using his points.

22  Martinez has not paid his assessment since 2009 and is $1,480 in arrears. This raises another defense to

23  the breach of contract claim, since Martinez's own performance of his contractual obligations is an

24  element of that claim.

25       Martinez premises his theory of class certification on the grounds that all class members had a

26  contract with Welk. (Pl. Mot. for Class Cert. at 1.) Thus, even apart from his unusual views about mold,

27  his atypicality with regard to the contract is enough for the Court to find that Martinez's claims and

28  defenses are not typical of those of the class he seeks to represent.

//

09cv2883

1

2          **4.      *Adequacy***

3               Adequacy of representation requires that the representative parties will fairly and adequately

4    protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where (i) counsel for the

5    class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed

6    class representatives are not antagonistic to the interests of the class. Here, Welk once again questions

7    the adequacy of Plaintiff's counsel.[1] However, because issues of typicality and predominance are

8    determinative, the Court need not reach a finding on adequacy.

9    **B.      Rule 23(b)(3)**

10              In addition to the prerequisites set forth in Rule 23(a), a class must also be maintainable under

11   Rule 23(b). Under Rule 23(b)(3), certification is appropriate if (i) questions of law or fact common to

12   the members of the class predominate over any questions affecting only individual members, and (ii) a

13   class action is superior to other available methods for the fair and efficient adjudication of the contro-

14   versy. Fed. R. Civ. P. 23(b)(3).

15         **1.      *Predominance***

16              Martinez argues that common questions of law and fact predominate over individual issues, and

17   that his claims will be adjudicated with evidence common to the class. Specifically, he asserts that his

18   claims are based on form contracts that are "essentially identical" for all purposes relevant to the claims

19   raised in the lawsuit. Likewise, he says Welk's failure to advise about the mold issues was uniform to all

20   class members, as was its failure to address the mold issues. Thus, according to Martinez, the entire

21   class was given essentially the same form contract and representations, and then uniformly subjected to

22   the same practices by Welk.

23              Welk responds, and the Court agrees, that individual issues predominate for a number of reasons.

24    Martinez's breach of contract and breach of fiduciary duty claims raise predominantly individual issues.

25   First, not all Platinum Points owners have the same contract. Some points owners have no contract with

26   Welk because they purchased their points on the resale market (from other owners, not Welk). Those

27   who do have contracts with Welk do not all have the same contract—as demonstrated by the fact that

28

---

[1] This is now the third such challenge (first in Welk's preemptive motion to deny certification, and then in its motion to disqualify counsel, both of which the Court denied).

09cv2883

1   Martinez himself has two separate contracts. Second, determining whether Welk breached the contract

2   requires individual inquiries, including whether the putative class member already knew or should have

3   known of the condition, and whether the condition materially affected the value or desirability of the

4   property to that particular owner. Third, Martinez cannot establish damages through class-wide proof,

5   largely because Martinez's damages result from his unique unwillingness not to use his points. For these

6   reasons, the Court agrees with Welk that individual issues predominate regarding the breach of contract

7   and breach of fiduciary duty claims.[2]

8       Additionally, Martinez's negligence, nuisance, and breach of implied warranty of habitability

9   claims are not suitable for class treatment because they depend upon the peculiar circumstances and

10  experiences of each class member. Determining whether mold caused injury, interfered with a class

11  member's visit to the Resort, or breached the warranty of habitability requires individualized inquiries.

12  These include, for example, whether an individual stayed at the Resort, whether he saw mold, whether it

13  impacted him or substantially interfered with his enjoyment of the property, and whether it harmed him.

14  *See, e.g.*, *Tourgeman v. Collins Fin. Servs.*, 2011 U.S. Dist. LEXIS 122422, at *49 (S.D. Cal. Oct. 21,

15  2011) ("Causation is an element of the negligence claim. And because causation must be adjudicated on

16  a class member-by-class member basis, this individual issue threatens to swamp the common ones.").

17      Martinez's UCL claims also require individualized inquiries. First, the fraudulent practices'

18  allegations arise from oral statements made by Welk to Martinez, not uniform statements to the class.

19  Martinez's deposition confirmed that all of these alleged false statements were made to him orally, and

20  that he is aware of no other class member who heard the same alleged misrepresentations. (*See* Warren

21  Decl., Exh. 5, pp. 247:25-248:5, 145:24-146:5.) Also, the fact that many putative class members

22  purchased their points from third parties or never stayed at the Resort makes it unlikely that they ever

23

24      [2]   Martinez does not identify the specific contractual provision that Welk allegedly breached. In

25  the briefing, Welk assumed that the claims arose from a provision in the 2007 contract obligating Welk
    to disclose all facts "materially affecting the value or desirability of the property that are not known to,

26  or within the diligent attention and observation of the parties." However, at the hearing, Plaintiff's
    counsel suggested that the common feature of all contracts is that they gave each putative class member

27  the *right* to stay at the Resort. But Martinez has not presented any evidence that the alleged mold
    deprived any (let alone all) points owners of this right. To the contrary, such a loss seems purely

28  speculative and would certainly require individual inquiries. For example, at least 17,000 class members
    have never stayed at the Resort and likely have no intention of visiting the Resort, since they can use
    their points on numerous other facilities. (*See* O'Donnell Decl. ¶ 7.) Further, the only reason Martinez
    can no longer use his points is that he chose to stop using them.

1   communicated with Welk. Because Martinez cannot show that the same alleged misrepresentations were

2   made to each class member, certification is improper.[3]

3       In reply, Martinez frames the issue as a classwide omission, rather than a classwide misrepresen-

4   tation. He claims this creates a common question of whether the omission is likely to deceive a

5   reasonable consumer. However, Martinez has not demonstrated what impact this alleged omission had

6   on the class in general, or anyone in particular. He cites to *In re Tobacco II Cases*, 46 Cal. 4th 298, 320

7   (2009), but in a situation like this one, *Mazza* now controls in the Ninth Circuit. *See Mazza*, 666 F.3d at

8   596 ("In the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant

9   class must be defined in such a way as to include only members who were exposed to advertising that is

10  alleged to be materially misleading."). Here, similarly, not all class members were exposed to the same

11  representations regarding mold, as demonstrated by Martinez's unique interactions with Welk. There

12  was nothing similar to the massive advertising campaign in *Tobacco II* that would have exposed all class

13  members to the same information. Instead, individual inquiries would be necessary to determine what

14  Welk represented or omitted to each class member. Therefore, reliance may not be presumed for all

15  putative class members, whether via an alleged misrepresentation or an alleged omission.[4]

16      Finally, the unlawful practices claims require individualized inquiries because the physical

17  conditions of the Resort are constantly changing, the knowledge and preferences of each owner may

18

19      [3] *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) (holding that where many
class members never saw the allegedly misleading advertisements prior to purchase, a classwide
20  presumption of reliance was inappropriate); *Davis-Miller v. Automobile Club of Southern California*,
201 Cal. App. 4th 106, 125 (Cal. Ct. App. 2011) ("An inference of classwide reliance cannot be made
21  where there is no evidence that the allegedly false representations were uniformly made to all members
of the proposed class."); *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 926 (2010) (denying
22  certification of UCL claim where majority of class members were not exposed to allegedly false
representation).

23

24      [4] The Court also notes that by framing his argument as one of omission, not misrepresentation,
Martinez undercuts his typicality argument. Welk allegedly made misrepresentations to Martinez
25  regarding mold; to suggest that the rest of the class was subject to an omission and not a
misrepresentation further demonstrates that Martinez's claims are not typical of those of the class he
26  seeks to represent. Martinez cannot logically claim he was subject to both an omission and a
misrepresentation regarding the alleged mold. Welk either made representations to him or it did not (and
27  the record indicates that it did). Moreover, Martinez did not rely on the alleged misrepresentation.
Rather, his actions indicate the opposite of reliance: Even though he was told the Resort was safe for his
28  son, Martinez decided never to use his points again because he was convinced the Resort was unsafe.
This lack of reliance further demonstrates his atypicality, in addition to illustrating why individual issues
predominate.

1  vary, the interactions between the class members and Welk vary considerably, and the alleged

2  misstatements all arise from oral statements.

3        For all of these reasons, the Court finds that individual issues predominate over common issues.

4  **2.     *Superiority***

5        Because the predominance issue is determinative for purposes of Rule 23(b)(3), the Court does

6  not find it necessary to address whether a class action is superior to other available methods of

7  adjudicating this controversy.

8                                        **IV.**

9                                   **CONCLUSION**

10       The Court finds that Martinez has not presented a certifiable class. His counsel focus on Welk's

11  alleged misconduct and seem to discount Martinez's role, but at the end of the day, they must satisfy

12  each Rule 23 requirement, and they have not. As discussed above, the Court concludes that Martinez

13  fails the typicality prong, and individual issues predominate. Martinez's claims are premised on the idea

14  that his points have lost value. But this seems subjective and individualized—they have diminished in

15  value *to him*, based on his personal views and circumstances (his son's illness, his concern about mold,

16  and Welk's oral statements to him). Martinez has not clearly articulated how his alleged loss impacts the

17  value of points for all other putative class members, who continue to use their points and (to the Court's

18  knowledge) have not expressed concerns, complaints, or even awareness about mold at the Resort. The

19  Court therefore **DENIES** Plaintiff's motion for class certification.

20  **IT IS SO ORDERED.**

21  DATED:  July 13, 2012

22  _____
    Hon. Anthony J. Battaglia

23  U.S. District Judge

24

25

26

27

28