UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HERMENEGILDO ("JAY") MARTINEZ, an individual, on his own behalf and on behalf of all others similarly situated, | ) ) ) | Civil No.: 09cv2883 AJB |
| | ) | |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | ) ) | |
| | ) | (Doc. No. 128) |
| THE WELK GROUP, INC.; WELK RESORT GROUP INC.; WELK MUSIC GROUP, INC.; SOLEIL COMMUNICATIONS, INC.; and DOES 1 through 25, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Presently before the Court is Defendants, the Welk Group, Inc., Welk Resort Group, Inc., Welk Music Group, Inc., and Soleil Communications, Inc., (collectively, "Defendants"), motion for summary judgment, or in the alternative partial summary judgment.[1] [Doc. No. 128.] Plaintiff filed an opposition, [Doc. No. 140.], and Defendants filed a reply, [Doc. No. 143]. On September 25, 2012, the

_____

[1] Defendants also requested that the Court take judicial notice of the Legislative History of the Vacation Ownership and Time-Share Act of 2004, Cal. Bus. & Prof. Code § 11211 *et seq*. *See* 2004 Cal. Legis. Serv. Ch. 697 (A.B. 2252) § 14, effective July 15, 2005. Under Federal Rule of Evidence 201(b), a court may take judicial notice of facts that are "(1) generally known within the trial court's territorial jurisdiction; or (2) whose accuracy cannot be easily questioned." This includes matters of public record and legislative history of state statute. *See Getty Petroleum Marketing, Inc v. Capital Terminal Co.*, 391 F.3d 312, 320 (1st Cir. 2004); *Chaker v. Crogan*, 428 F.3d 1215, 1223 (9th Cir. 2005). Accordingly, the Court grants Defendants' request for judicial notice.

1  Court issued an order setting a supplemental briefing schedule requesting the parties to address the

2  fraudulent prong and unfair prong with respect to Plaintiff's fifth cause of action alleging violation of

3  California's Unfair Competition Law § 17200, *et seq.* ("UCL").[2]   On October 9, 2012 Defendants filed

4  a supplemental brief in support of their motion for summary judgment, [Doc. No. 149], and on October

5  23, 2012, Plaintiff filed his supplemental reply, [Doc. No. 151].  In accordance with Civil Local Rule

6  7.1.d.1, the Court finds this motion suitable for determination on the papers and without oral argument.

7  For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment as to

8  all causes of action set forth in Plaintiff's Fourth Amended Complaint ("4AC").  [Doc. No. 58.]

9  **BACKGROUND**

10  This matter is a brought by Plaintiff Hermengildo "Jay" Martinez ("Plaintiff"), alleging various

11  causes of action stemming from Defendants failure to abate and disclose the presence of mold at the

12  Welk Resort San Diego (the "Resort").[3]  As the factual record in this case is well developed, the Court

13  relates only those facts essential to the instant motion.[4]  Plaintiff initially purchased 120,000 Platinum

14  Points from Welk Resort Group, Inc. ("Welk") in 2007, which provided him with the opportunity to stay

15  at Welk resorts around the world or at any other time-share resort that accepts Platinum Points for

16  vacation stays.[5]  Plaintiff then "upgraded" his 2007 Platinum Points interest in April 2009 to 240,000

17  Platinum Points.  [4AC ¶ 23; Ex. A to the 4AC, p. 24; Ex. B to the 4AC, p. 54.]

18  At some point during the sales process, Plaintiff asked Welk if the Resort was safe for his son

19  (who previously had cancer and needed a clean environment), and the sales agent assured him the

20

21  [2] The Court issued this supplemental briefing schedule to fairly adjudicate all claims before the
22  Court.  Accordingly, the motion hearing scheduled for October 5, 2012 was vacated.

23  [3] This action was originally filed as a class action on December 23, 2009.  [Doc. No. 1.]
   However, on July 13, 2012, the Court denied Plaintiff's motion to certify the class. [Doc. No. 139.] Only
24  Plaintiff's individual claims against all Defendants remain.

25  [4] Prior to Defendants instant motion for summary judgment, Defendants moved to dismiss and
   strike portions of Plaintiff's Third Amended Complaint ("3AC") and Plaintiff's Fourth Amended
26  Complaint ("4AC").  The Court granted in part and denied in part Defendants' motion to dismiss and
   motion to strike Plaintiff's 3AC, [Doc. No. 57], and granted Defendants' motion to strike and denied
27  defendants' motion to dismiss Plaintiff's 4AC, [Doc. No. 70.]

28  [5] Defendants have been active in the vacation resort ownership business since 1984, and have
   resorts in Maui, Hawaii; Palm Desert, California; Branson, Missouri; Cabo San Lucas, Mexico, and a
   "flagship property" at the Welk Resort San Diego in Escondido, California.  [Doc. No. 58 at 9.]

2

1    Resort was clean, safe, and well maintained.  [*See* Warren Decl., Ex. 5, pp. 36:20-37:12, 247:25-248:5.]

2    Plaintiff purchased his Platinum Points solely for the purpose of staying at the Welk Resort San Diego,

3    [Martinez Depo., ¶¶ 3-4.], which is located in Escondido, California, and has more than 650 units in

4    three subdivisions: the Lawrence Welk Resort Villas, the Villas on the Green, and the Mountain Villas.

5    [Coogan Decl., ¶ 3.]

6         During a visit to the Resort in 2009, Plaintiff notified the front desk that his room smelled musty.

7    Welk sent a housekeeper, who cleaned a sink, which apparently fixed the problem. [*See id.* at 102:9-

8    105:6, 123:7-22.]  Plaintiff later went looking for fishing bait in an outside utility closet (thinking it to

9    be a cool, damp location), where he found something that may have been mold, but he could not be

10   certain.[6]  After Plaintiff stayed at the Resort in 2009, his neighbor (a former Welk employee) told him

11   that there was mold at the Resort. This story troubled Plaintiff because he believed that if mold existed

12   in one unit at the Resort, all 650 units in the 500-acre Welk complex would be uninhabitable, even if the

13   mold were removed. [*See* Warren Decl., Ex. 5, p. 224:8-14.]

14        Subsequent to his 2009 stay at the Resort, Plaintiff decided he would never use his points

15   again—either at Welk or any other timeshare resort.  Additionally, Plaintiff has not attempted, nor is he

16   willing to attempt, to sell his Platinum Points to another individual, as he does not believe it would be

17   ethical given his knowledge of the extensive mold issues at the Resort. [Martinez Decl., ¶ 8.]

18   Consequently, Plaintiff claims his Platinum Points have diminished in value.  [*See id.* at 139:7-16,

19   208:23-209:5; Exh. 4, p. 3:24-26; Exh. 1, p. 12:3-27; Exh. 3, p. 8:12-9:24.]  Plaintiff sued Defendants

20   for breach of contract, breach of fiduciary duty, negligence, nuisance, breach of the implied warranty of

21   habitability, and for violations of California's Unfair Competition Law ("UCL").  Defendants now seeks

22   summary judgment on all claims, or in the alternative for partial summary judgment.

23                                        **LEGAL STANDARD**

24        Summary judgment is properly granted when there is no genuine issue as to any material fact

25   such that the moving party is entitled to judgment as matter of law.  Fed.R.Civ.P. 56(c). Entry of

26   summary judgment is appropriate "against a party who fails to make a showing sufficient to establish

27

28        ───────────────────

          [6] In any event, the closet was not part of the Resort's living spaces. (*See id.* at 110:4-113:5; Exh. 2, p. 12:3-5.)

1   the existence of an element essential to that party's case, and on which that party will bear the burden of

2   proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court shall consider all

3   admissible affidavits and supplemental documents submitted on a motion for summary judgment. *See*

4   *Connick v. Teachers Ins. and Annuity Ass'n*, 784 F.2d 1018, 1030 (9th Cir.1986).

5        The moving party has the initial burden of demonstrating that summary judgment is proper.

6   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). To avoid summary judgment, the nonmovant

7   cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986).

8   Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty*

9   *Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Finally, if the factual context makes the nonmoving party's

10  claims implausible, that party must come forward with more persuasive evidence than would otherwise

11  be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods. v.*

12  *Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006 (1988).

13       The court may not weigh evidence or make credibility determinations on a motion for summary

14  judgment. Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in

15  the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *United States v. Diebold*,

16  *Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury

17  could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in

18  determining whether the nonmovant has met his burden, the court must consider the evidentiary burden

19  imposed upon him by the applicable substantive law. *Id.* If the nonmovant's evidence is "merely

20  colorable, or is not significantly probative," summary judgment may be granted. *Id.*

21                                    **DISCUSSION**

22       Plaintiff's 4AC alleges five causes of action: (1) breach of contract; (2) breach of fiduciary duty;

23  (3) negligence; (4) private nuisance; 5) unfair competition in violation of California Business and

24  Professions Code § 17200 *et seq.*; and (6) breach of the implied warranty of habitability. [Doc. No. 128.]

25  Defendants contend they are entitled to summary judgment on all claims because Plaintiff cannot prove

26  he was injured as a result of Defendants' conduct.  Specifically, Defendants argue Plaintiff has failed to

27  produce any witnesses, any documents, or any evidence to support that his Platinum Points have "lost

28  value."  [Doc. No. 128, 8:8-13; Martinez Depo., pp. 176-77.]

### I.      Breach of Contract

Plaintiff's first cause of action alleges damages stemming from Defendants' alleged breach of the Purchase and Sale Agreement.  Plaintiff contends that because he has satisfied all contractual obligations to Welk, by paying for time-share ownership points and all associated fees, and Defendants breached such contract, by failing to abate and disclose the presence of mold, Defendants are liable for "damages consisting of the cost of repairs and replacement, diminutions in value of the time share ownership points, and other associated costs." [FAC ¶ 34.]  Defendants move for summary judgment alleging that Plaintiff has failed to identify a specific provision of the Purchase and Sale Agreement that has been breached, has not—directly or indirectly—paid for repair or replacement costs at the Resort since 2009, as he has not paid his annual maintenance fees and is currently $1,480.48 in arrears, [Zorens Decl. ¶ 7], and even if Plaintiff was excused from paying his annual fees, and thus excused from performing under the contract, Plaintiff has failed to establish he was injured as a result of Defendants' conduct.

Specifically, Defendants contend Plaintiff  has offered no proof to support his contention that his Platinum Points have diminished in value.  In fact, Plaintiff admits that when his Platinum Points "lost value," he means they lost value to him because he is not using them. [Martinez Depo., pp.208:23-210:11.]  To satisfy their burden under Rule 56, Defendants offer external and internal rating system data showing that Welk Resort San Diego has maintained its premier rating since 2006 when the system was implemented, evidencing that Platinum Point Owners have maintained the same trading power since that time. Under this system, owners of Welk Platinum Points can exchange points for stays at non-Welk properties through a timeshare exchange company called Interval International (II).  [Ellis Decl., ¶ 5.][7]  In 2007, 90,000 Platinum Points converted to one week on the II exchange market for a studio unit; 120,000 Platinum Points converted to one week on the II exchange market for a one-bedroom unit; and 240,000 Platinum Points converted to one week on the exchange market for a two-bedroom unit.  [*Id.*]  The same is true today, as the value of Platinum Points through the exchange program has not changed since 2007.  [*Id.*]  Therefore, Defendants assert that Plaintiff's damages are either

---

[7] In order to participate in the II Exchange Program, the Owner Services department at a Welk Resort department converts Platinum Points into exchange weeks.  [*Id.*] The weeks are then deposited by Owner Services with the II Exchange Program.  [*Id.*]

09cv2883

1  "self-inflicted,"[8] as he is unwilling to use his Platinum Points; or speculative, as he has failed to present

2  evidence of diminution of value.

3       In response, Plaintiff alleges that his damages are not self-inflicted because "he purchased the

4  points specifically for the purpose of staying at Welk Resorts San Diego. . . has no interest in staying at

5  any other locations owned and operated by Welk or using his Platinum Points to stay at other resorts. . .

6  and purchased the points specifically because he wanted to stay at a place that was clean, safe and well

7  maintained." [Martinez Depo., ¶¶ 3-5, 9.]  Plaintiff further alleges that even in the absence of a finding

8  of "actual damages," summary judgment should be denied because nominal damages are still available

9  and recoverable where a breach is shown.  [Doc. No. 140, 8-9.]

10      In California, "[a] cause of action for breach of contract requires proof of the following

11 elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3)

12 defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v.*

13 *Maldonado*, 158 Cal.App.4th 1226, 1239, 70 Cal.Rptr.3d 667 (2008); *Oasis West Realty, LLC v.*

14 *Goldman*, 51 Cal.4th 811, 821 (2011).  To satisfy the damages element a plaintiff must show

15 appreciable and actual damage, that are clearly ascertainable in both their nature and origin. *See St. Paul*

16 *Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins*., 101 Cal.App.4th 1038, 1060, 124

17 Cal.Rptr.2d 818 (2d Dist.2002) ("An essential element of a claim for breach of contract are damages

18 resulting from the breach.") (italics omitted); *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256

19 Cal.App.2d 506, 511, 64 Cal.Rptr. 187 (2d Dist.1967) ("A breach of contract without damage is not

20 actionable."); Cal. Civ. Code § 3301 ("No damages can be recovered for a breach of contract which are

21 not clearly ascertainable in both their nature and origin.").

22      Here, Plaintiff has failed to produce any evidence as to how he has performed all obligations

23 under the contract or is otherwise excused from performing such obligations.  Specifically, although

24 Plaintiff alleges in the 4AC that he has paid all fees associated with his ownership of Platinum Points,

25 Plaintiff fails to dispute that he is currently $1,480.48 in arrears for unpaid annual maintenance fees, or

26 offer any evidence that such amounts should be excused.  Accordingly, because Plaintiff acknowledged

27

28      ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
        [8] Defendant contends Plaintiff's damages are self-inflicted because Plaintiff has decided not to
        use his Platinum Points "at the Welk Resort or any number of *thousands* of spectacular timeshare resorts
        around the world." (emphasis in original) [Doc. No. 128, 6:18-21.]

09cv2883

1   in his 2009 contract that he is "obligated to pay the Welk Resorts Platinum Owners Association annual

2   maintenance assessments. . . [and] failure to pay any such assessment may result in the suspension of

3   use privileges," Plaintiff has failed to establish an essential element of his breach of contract claim.[9]  *See*

4   *Celotex*, 477 U.S. at 331 (summary judgment is appropriate if the moving party demonstrates that the

5   nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's

6   claim).

7          Nevertheless, even if Plaintiff was excused from performing under the contract, he has failed to

8   allege that he has been damaged as a result of Defendants' conduct.  Specifically, Plaintiff offers no

9   evidence to rebut Defendants' proof that his Platinum Points currently have the same value on the II

10  exchange market as they did when he first purchased his points in 2007.  Additionally, Plaintiff fails to

11  address the depositions of other Resort guests, which state that they enjoy the Resort facilities and

12  believe that the Resort is well maintained.  [Ellis Decl., ¶ 6.]  Indeed, although more than 130,000 guests

13  stay at the Resort each year, Defendants are aware of fewer then 15 complaints regarding mold in the

14  last 8 years. [*See id.*]  Thus, the only evidence Plaintiff produced in support of his claim that his points

15  decreased in value was his own self-serving testimony as to his personal reasons for refusing to stay at

16  the Resort, even though Defendants have done nothing to prevent Plaintiff from using his points.

17  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.1993); *United States v. One Parcel of Real Property*,

18  904 F.2d 487, 492 n. 3 (9th Cir.1990) ( finding a conclusory, self-serving affidavit, lacking detailed facts

19  and any supporting evidence, was insufficient to create a genuine dispute).[10]

20         Furthermore, although Plaintiff cites *Sweet v. Johnson*, 169 Cal.App.2d 630, 337 P.2d 499, 500

21  (1959), for the proposition that nominal damages are presumed as a matter of law to flow directly from a

22  breach of contract, such argument was recently rejected by the Ninth Circuit in *Ruiz v. Gap, Inc*.,

23  wherein the Court specifically held that under the Ninth Circuit, "a breach of contract claim requires a

24

25         [9] Plaintiff's Declaration states that "he was completely unaware" that he is currently $1,480.48 in
    arrears, and has not received any correspondence from Defendants regarding delinquent annual
26  maintenance fees. [Martinez Decl., ¶ 10.] Although the Court need not consider Plaintiff's assertion
    under Rule 56(c)(3), because it was not cited to in Plaintiff's moving papers, Plaintiff's assertion is
27  nevertheless unpersuasive because it provides no basis to excuse Plaintiff from his contractual
    obligations.

28         [10] Even more so, Plaintiff states that "my family and I have refused to visit or stay at Welk
    Resort San Diego and will continue to refuse to visit or stay at Welk Resort San Diego." [Martinez Decl.
    ¶ 7.]

1   showing of appreciable and actual damage."  380 Fed. Appx. 689, 691, 692 (9th Cir. 2010) (rejecting the

2   holding of *Sweet v. Johnson*.).  Therefore, because Plaintiff does not put forth any evidence of actual and

3   appreciable damages, nevertheless rebut Defendants' evidence of his non-payment of annual

4   maintenance fees, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's breach

5   of contract claim.

6   ## II.        Breach of Fiduciary Duty

7          Plaintiff's second cause of action alleges that Defendants owed him a fiduciary duty as a result

8   of the Purchase and Sale Agreement documents, and Defendants violated this duty when they failed to

9   maintain the Resort.[11]  [4AC ¶¶ 37, 38, 40.]  Defendants argue Plaintiff's breach of fiduciary duty cause

10  of action is synonymous with his breach of contract cause of action, and must fail because Plaintiff has

11  failed to establish conduct or circumstances that elevate Defendants' obligations beyond those existing

12  by virtue of the Purchase and Sale Agreement documents.  [Doc. No. 128, 9:10-12.]  Accordingly,

13  because Plaintiff has failed to prove the existence of a fiduciary relationship, separate and apart from

14  Defendants' contractual obligations, Defendants' maintain Plaintiff has failed to state a claim as a matter

15  of law.  Conversely, Plaintiff argues that a fiduciary relationship can be created either by contract or by

16  operation of law.  Therefore, a fiduciary relationship was created between Plaintiff and Defendants both

17  by the 2007 purchase agreement[12] and because the Welk employee who sold Plaintiff the Platinum

18  Points held herself out as Plaintiff's agent.[13]  [Doc. No. 140, 11.]

19

20  _____

21          [11] The Purchase and Sale Agreements provided that Defendants would maintain "[a] fiduciary duty of utmost care, integrity, honesty, and loyalty" in their dealings with purchasers of real estate,

22  provide "diligent exercise of reasonable skill and care in performance of the agent's duties;" uphold "a duty of honest and fair dealing and good faith;" and fulfill their "duty to disclose all facts known to the agent

23  materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties."

24          [12] However, as the Court noted in its previous Order denying class certification, the 2007 contract was superseded by the 2009 contract when Plaintiff purchases additional Platinum Points.

25  [Doc. No. 139, 5.]

26          [13] Plaintiff also asserts in his opposition, while not in his 4AC, that Defendants breached their fiduciary duties by not advising Plaintiff of the serious water intrusion, mold, mildew and fungus issues

27  at the Welk Resort San Diego.  [Doc. No. 140, 11:13-16.]  However, because Plaintiff did not raise these issues in the 4AC, he may not now raise such arguments.  *See Wasco Prods., Inc. v. Southwall Tech.*,

28  435F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings")

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) resulting damage. *Pellegrini v. Weiss*, 165 Cal.App.4th 515, 524 (2008). A fiduciary relationship is created between parties to a transaction wherein one of the parties has a duty to act with the utmost good faith for the benefit of the other party. *Gilman v. Dalby*, 176 Cal.App.4th 606, 614. "Absent such a relationship, a plaintiff cannot turn an ordinary breach of contract into a breach of fiduciary duty based solely on the breach of the implied covenant of good faith and fair dealing contained in every contract." *Id*; *Jhaveri v. ADT Sec. Servs., Inc.*, 2012 WL 843315 *4 (finding that California law rejects the idea that a contractual relationship gives rise to a fiduciary relationship absent conduct or circumstances that could reasonably elevate the parties conduct above those present by virtue of the contractual relationship). Moreover, the "relationship of seller to buyer is not one ordinarily vested with fiduciary obligation, even though sellers routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value. In such transactions, the seller is held to the mores of the marketplace." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 221 (1983) (superseded by statute on other goods). Thus, unless a seller has taken on "duties beyond those of mere fairness and honesty in marketing its product," the law of fiduciary relationships is ill-suited to deal with such claims. *Id.*

In the present case, because Plaintiff has failed to allege, nevertheless refute Defendants' evidence regarding the existence of a fiduciary relationship above and beyond the contractual relationship between the parties, his breach of fiduciary duty claim necessarily fails.[14] Moreover, because summary judgment is not a second opportunity to flush out deficiencies in the pleadings, Plaintiff cannot now assert for the first time in his opposition that the fiduciary relationship was created by representations of Defendants' employee. *See Wasco Prods. Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment with respect to Plaintiff's second cause of action for breach of fiduciary duty.

//

---

[14] To survive a motion for summary judgment, once the moving party has satisfied its initial burden of production, the burden of proof shifts to the nonmovant to show that there is a genuine issue of material fact. *Celotex*, 477 U.S. at 331. Here, Plaintiff has failed to establish *why* the contractual provisions create a fiduciary duty.

09cv2883

***III.    Negligence***

Plaintiff's negligence claim alleges Defendants owed a duty to avoid foreseeable damages and refrain from engaging in tortious conduct.  Plaintiff maintains Defendants breached this duty by selling time-share ownership points for dwellings that suffered from dangerous leaks, water intrusion, mold, mildew and/or fungus, and failing to maintain and repair those units. [4AC ¶ 43.]  Plaintiff further asserts that under California law, "the same act may be both a breach of contract and a tort."  *Perry v. Robertson*, 201 Cal.App.3d 333, 340 (1988).  Accordingly, Plaintiff does not dispute that his negligence claim seeks solely economic damages, but alleges that he should be permitted to go to trial on both his contract and tort causes of action regardless of the lack of economic injury.

Defendants respond, and the Court agrees, that Plaintiff is precluded from pursuing his negligence claim because it seeks recovery in tort for purely economic loss, and is thus barred by California's economic loss doctrine.  *See KB Home v. Super. Ct.*, 112 Cal.App.4th 1076, 1079, 5 Cal.Rptr.3d 587 (2004) (holding that subject to certain exceptions, the economic loss rule bars recovery in tort for economic damages arising out of matters governed by contract).  Under California law, the economic loss doctrine bars tort claims based on the same facts and damages as breach of contract claims. The doctrine "precludes recovery for 'purely economic loss due to disappointed expectations,' unless the plaintiff 'can demonstrate harm above and beyond a broken contractual promise.'" *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 629 F.Supp.2d 1135, 1146 (E.D.Cal.2009) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004)); *see also Cnty. of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 328, 40 Cal.Rptr.3d 313 (2006) (stating that the economic loss rule applies unless "the plaintiff can establish that the fraud exposed the plaintiff to liability"). The rule seeks to "prevent the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter*, 34 Cal.4th at 988, 22 Cal.Rptr.3d 352, 102 P.3d 268 (internal quotation marks omitted).  Thus, "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law" and "exposes a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id.* at 989, 993, 22 Cal.Rptr.3d 352, 102 P.3d 268 (internal quotation marks omitted).

09cv2883

1    Furthermore, Plaintiff's reliance on *Perry v. Robertson* is misguided.  In *Perry*, the plaintiff

2   asserted both breach of contract claims and tort claims, alleging *both* economic loss and bodily injury.

3   Therefore, at the conclusion of a jury trial awarding Plaintiff her attorneys' fees based on the breach of

4   the contract claim, the court stated that plaintiff was not required to elect a remedy prior to the request

5   for attorneys' fees.  *Id*. at 342-45.  Here, however, because Plaintiff asserts recovery for purely

6   economic loss, *Perry* is inapplicable.  *See e.g., Atlantic Richfield Co.*, 137 Cal.App.4th at 337 ("cost of

7   repair does not constitute a physical injury").  Accordingly, the Court **GRANTS** Defendants' motion for

8   summary judgment with respect to Plaintiff's negligence claim.

9   **IV.   *Private Nuisance***

10    Plaintiff's fourth cause of action alleges Defendants "by their acts, conduct, failure to act, and/or

11   omissions, created, maintained, exacerbated, and concealed a private nuisance and did not take any

12   reasonable steps to immediately abate the nuisance, although requested to do so." [4AC ¶ 48.]

13    California law requires a disturbance of rights in land before a plaintiff may maintain a cause of

14   action for private nuisance.  *See Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1549 (2009);

15   *Venuto v. Owen-Corning Fiberglass Corp*., 22 Cal.App.3d 116 (1971).  As defined by the Restatement

16   Second of Torts, "[a] private nuisance is a nontrespassory invasion of another's interest in the private

17   use and enjoyment of land."[15]  *People v. McDonald*, 137 Cal.App.4th 521, 534, 40 Cal.Rptr.3d 422

18   (2006), citing (Rest.2d Torts, § 821D, p. 100).  In *San Diego Gas & Electric v. Superior Court*, 13

19   Cal.4th 893, 938, 55 Cal.Rptr.2d 724, 920 P.2d 669 (1996), the court held that in order to state a claim

20   for private nuisance a plaintiff must establish three elements: (1) the plaintiff must prove an interference

21   with his use and enjoyment of his property; (2) "the invasion of the plaintiff's interest in the use and

22   enjoyment of the land [must be] substantial, i.e., that it cause[s] the plaintiff to suffer substantial actual

23   damage;" and (3) "[t]he interference with the protected interest must not only be substantial, but it must

24   also be unreasonable, i.e., it must be of such a nature, duration or amount as to constitute unreasonable

25   interference with the use and enjoyment of the land."  *Id. See also* California BAJI Instruction 8.60

26

27

28    [15] California nuisance law follows the Restatement approach to private nuisance.  *See San Diego
Gas & Elec. Co. v. Super. Ct.*, 13 Cal.4th 893, 55 Cal.Rptr.2d 724, 920 P.2d 669, 696-97 (1996).

09cv2883

1    Here, Defendants assert, and the Court agrees, that Plaintiff has failed to prove an interest in real

2    property and thus his private nuisance claim must fail.[16]   As stated in the Department of Real Estate

3    Public Report for the Welk Resort Group, ("Public Report"), the Platinum Points program provides a

4    "multi-location, points-based, time-share use plan with a nonspecific time-share interest."  [Doc. No.

5    128-7, p. 5.]  Moreover, even though the Association manages the program for the use and benefit of the

6    owners, the "owners do not receive an interest in real property."[17]   [*Id.*]   In reply, Plaintiff does not

7    refute Defendants' argument, but rests solely on the Court's previous order denying Defendants' motion

8    to dismiss the instant claim.[18]   [Doc. No. 70; Doc. No 140, pp. 16-17.]  Although the Court denied

9    Welk's previous motion, when ruling on a motion for summary judgment, the court considers all the

10   evidence in support or against the claim to determine if there is a genuine dispute.[19]   Therefore, the

11   nonmoving party cannot simply rest on naked assertions in the complaint or unsupported declarations.

12   *See e.g., LeBlanc v. Salem*, 196 F.3d 1, 2 (1st Cir.1999) (stating that when ruling on a motion for

13   summary judgment the court must restrict its inquiry to facts supported by the record. It does "not give

14   credence to empty rhetoric . . .  but credit[s] only those assertions that are supported by materials of

15   evidentiary quality"); *Nelson v. Pima Cmty. College*, 83 F.3d at 1081-82. ("[M]ere allegation and

16   speculation do not create a factual dispute for purposes of summary judgment.").

---

18   [16] *See Trinkle v. Cal. State Lottery*, 71 Cal.App.4th 1198, 84 Cal.Rptr.2d 496, 500 (1999)
19   (rejecting private nuisance claim where plaintiff owned vending machines installed in third-party
     business establishments but had no interest in the real property of those businesses).

20   [17] Defendants also provided the Court with the Legislative history to the Vacation and
21   Ownership Act of 2004, wherein the Legislature amended California Business and Professions Code
     section 11004.5, to state that "time-share plans. . . are not subdivisions or subdivided lands subject to
     this chapter." (internal quotations omitted).

22
23   [18] In pertinent part, the Court's previous order stated, "In light of the Judge Anello's previous
     order denying Defendant's motion to dismiss Plaintiff's fourth cause of action for private nuisance [Doc.
     No. 57 at 11], and the fact that Plaintiff did not solely allege a personal property interest consisting only
24   of points in the 4AC [Doc. No. 58 at 7; Doc. No. 62 at 6–7], as Defendant contends [Doc. No. 61 at 5],
     the 4AC still *alleges enough facts to survive a motion to dismiss*." (emphasis added)

25
26   [19] The moving party has the initial burden of production for showing the absence of any material
     fact. *Celotex*, 477 U.S. at 331. The moving party can satisfy this burden in two ways, (1) by submit
     affirmative evidence that negates an essential element of the nonmoving party's claim, or (2)
27   demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential
     element of the nonmoving party's claim." *Id.*  Once the moving party has satisfied its initial burden of
28   production, the burden of proof shifts to the nonmovant to show that there is a genuine issue of material
     fact.  *Id.*

09cv2883

1    Accordingly, the Court finds Defendants have submitted sufficient evidence to establish that

2    Plaintiff's ownership of Platinum Points do not constitute a real property interest.  Therefore, the burden

3    shifts to Plaintiff to assert there is a genuine dispute with respect to the characterization of his interest.

4    However, after searching the record for evidence to support Plaintiff's contentions, the Court finds none,

5    and instead finds additional evidence in support of Defendants' claim.[20]  Moreover, even if the Court

6    found that Plaintiff had a real property interest in his Platinum Points, Plaintiff has failed to present

7    specific facts as to how the interference was both substantial and unreasonable.[21]  *Anderson v. Liberty*

8    *Lobby, Inc.*, 477 U.S. 242, 256 (1986) (finding the nonmovant must not rest on conclusory allegations

9    and must present "specific facts showing there is a genuine issue for trial."); *San Diego Gas & Elec.*

10   *Co.*, 13 Cal.4th at 938 (to sustain a cause of action for private nuisance there must be substantial and

11   unreasonable interference with plaintiff's enjoyment of his land).  Accordingly, the Court **GRANTS**

12   Defendants' motion for summary judgment on Plaintiff's private nuisance claim.

13   ***V.    Unfair Competition in Violation of California Business and Professions Code § 17200, et seq.***

14   California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent

15   business practice.  Cal. Bus. & Prof. Code §§ 17200-17210.  Because the statute is written in the

16   disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2)

17   unfair acts or practices, and (3) fraudulent acts or practices.  *Cel-Tech*, 20 Cal. 4th at 180; *Kearns v.*

18   *Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir.2009).  Here, Plaintiff's fifth cause of action alleges

19   Defendants violated all three sub-parts of the UCL. [Doc. No. 58, p. 16.]  Defendants assert Plaintiff's

20

21

---

22   [20] Plaintiff's own deposition testimony acknowledges that his time-share interest is not his
     personal property because he can't do what he wants with it, as he has to share time with other people.
23   [Martinez Depo, 221:1-17.] Moreover, attached to Plaintiff's moving papers is the Public Report,
     whereby it specifically states Plaintiff did not receive an interest in real property.  These materials could
24   not properly be considered by the Court at the motion to dismiss stage.

25   [21] Plaintiff's own deposition testimony, which was not refuted in Plaintiff's moving papers, states
     that Plaintiff enjoyed his room, and although he did complain about a "musty" smell, he never requested
26   to change rooms.  [Martinez Depo., 98-105.]  Plaintiff's only evidence in support of his claim is that
     "[fo]llowing our stay at Welk Resort San Diego in 2009 and our discovery of the mold issues at the
27   Welk Resort San Diego property, my family and I have refused to visit or stay at Welk Resort San
     Diego and will continue to refuse to visit or stay at Welk Resort San Diego." [Martinez Depo., ¶ 7.]
28   Because  such evidence is "merely colorable, [and] is not significantly probative," summary judgment is
     appropriate.  *Anderson*, 477 U.S. at 255.

09cv2883

1    UCL claim fails for a multitude of reasons, including lack of standing and failure to proffer sufficient

2    evidence to support a violation under the unlawful, unfair, or fraudulent prong.

3        **1.      Standing Under the UCL**

4        Defendants first argue Plaintiff lacks standing to sue under the UCL.  Specifically, Defendants

5    contend that Plaintiff (1) has not suffered "injury in fact" because he has not experienced any physical

6    injuries and the value of his Platinum Points have not diminished in value; (2) has not suffered a legally

7    cognizable injury because he is still able to use his Points; and (3) even if Plaintiff had evidence that his

8    Platinum Points had diminished in value, there is no casual connection between Defendants' alleged

9    wrongdoing and Plaintiff's speculation as to the value of his Platinum Points.  [Doc. No. 128, 14:15-25.]

10   Conversely, Plaintiff relies on *Kwikset Corporation v. Superior Court*, in which the California Supreme

11   Court stated that there are "innumerable ways in which economic injury from unfair competition may be

12   shown" including: (1) when a plaintiff surrenders more in a transaction than he otherwise would have;

13   (2) has a present or future property interest diminished; (3) is deprived of money or property to which he

14   has a cognizable claim; or (4) is required to enter into a transaction, costing more money or property,

15   that would otherwise have been unnecessary.  51 Cal.4th 310, 323 (2011).  Thus, Plaintiff argues that

16   just as the plaintiff in *Kwikset* would not have bought the padlock if the seller had disclosed where it

17   was really made, he would not have purchased Platinum Points from Welk had he known of the mold

18   issues at the Resort.  [Martinez Decl., ¶ 7.]

19       To have standing under the UCL, as amended by Proposition 64, a plaintiff must establish that

20   he has (1) suffered an injury in fact; and (2) lost money or property as a result of the unfair competition.

21   Cal. Bus. & Prof.Code § 17204; *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir.2009).

22   The "as a result of" language in Section 17204 requires the plaintiff to show a causal connection

23   between the defendant's alleged UCL violation and Plaintiff's injury.  *See Rubio v. Capital One Bank*,

24   613 F.3d 1195, 1204 (9th Cir. 2010).  "In approving Proposition 64, the California voters declared their

25   intent to prohibit private attorneys from filing lawsuits for unfair competition where they have no client

26   who has been injured in fact under the standing requirements of the United States Constitution."

27   *Buckland v. Threshold Enters., Ltd.*, 155 Cal.App.4th 798, 814, 66 Cal.Rptr.3d 543 (Cal.Ct.App.2007)

28   (internal quotations omitted).  Thus, to plead a UCL claim, a plaintiff must show he has suffered a

09cv2883

distinct and palpable injury as a result of the alleged unlawful or unfair conduct. *Buckland*, 155

Cal.App.4th at 814, 66 Cal.Rptr.3d 543 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372,

102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)) (internal quotation marks omitted). The requisite injury must be

"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

imminent, not conjectural or hypothetical." *Buckland*, 155 Cal.App.4th at 814, 66 Cal.Rptr.3d 543

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))

(internal quotation marks omitted).

   Cases decided since Proposition 64 have concluded that a plaintiff suffers an injury in fact for

purposes of standing under the UCL when he or she has:

> (1) Expended money due to the defendant's acts of unfair competition. *See e.g., Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 802-803, 49 Cal.Rptr.3d 555 (plaintiff alleged he was required to purchase excess fuel when returning rental truck); *Monarch Plumbing Co. v. Ranger Ins. Co.*, 2006 WL 2734391 (E.D.Cal., Sept. 25, 2006) (plaintiff alleged he paid higher insurance premiums because of defendant insurer's settlement policies); *Witriol v. LexisNexis Group*, 2006 WL 4725713 *6-7 (N.D.Cal., Feb. 10, 2006) (plaintiff incurred costs to monitor and repair damage to his credit caused by defendants' unauthorized release of private information]; *Southern Cal. Housing v. Los Feliz Towers Homeow.*, 426 F.Supp.2d 1061, 1069 (C.D.Cal.2005) (housing rights center lost financial resources and diverted staff time investigating case against defendants); *Laster v. T-Mobile USA, Inc*., 407 F.Supp.2d 1181, 1194 (S.D.Cal.2005) (defendants advertised cellular phones as free or substantially discounted when purchased with cellular telephone service, but plaintiffs were required to pay sales tax on the full retail value of the phones);
>
> (2) Lost money or property. *See e.g., Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc*., 129 Cal.App.4th 1228, 1240, 1262 (2005) (plaintiff's home and car were vandalized by animal rights protestors); or
>
> (3) Been denied money to which he or she has a cognizable claim. *See e.g., Progressive West Ins. Co. v. Super. Ct.*, 135 Cal.App.4th 263, 269-270, 285, fn. 5 (2005) (insurance company paid insured's medical bills, then sued to recover that money when insured collected damages from the third party who caused his injuries; insured had standing to bring UCL claim against insurance company); *Starr-Gordon v. Mass. Mut. Life Ins. Co.* 2006 WL 3218778, *1, *6-7 (E.D.Cal., Nov. 7, 2006) (plaintiff challenged the process by which defendant terminated her disability benefits).[22]

Therefore, after *Kwikset*, "plaintiffs who can truthfully allege they were deceived by a product's label

into spending money to purchase the product, and would not have purchased it otherwise, have 'lost

money or property' within the meaning of Proposition 64 and have standing to sue." *Kwikset*, 120

Cal.Rptr.3d 741, 246 P.3d at 881.

---

[22] *See Hall v. Time*, 158 Cal.App.4th 847, 854-55 (2008) (cataloging cases discussing standing under the UCL after Proposition 64).

1    Here, the Court finds Plaintiff's claim fails as a matter of law because he has failed to meet the

2  standing requirement under the UCL. Specifically, the Court finds Plaintiff's reliance on *Kwikset*

3  misguided as the facts and circumstances in *Kwikset* are distinguishable from the instant case.  Whereas

4  the court in *Kwikset* found that consumers had suffered injury in fact when certain locksets were labeled,

5  "Made in America," when in fact they were not, here, although Plaintiff alleges that an employee of

6  Welk stated that the Resort was "clean, safe, and well-maintained," he offers no proof to support the

7  assertion that these statements were in fact false.  [Martinez Decl., ¶ 7.]  For example, other than his

8  own self-serving declaration, Plaintiff's only proof to support his contention are several emails between

9  Wade Brent, the Chief Engineer of Welk, and Sean Coogan, Welk's General Manager, wherein the two

10  discussed mold remediation and terminate issues in several units.  *See e.g., Hansen v. United States*, 7

11  F.3d 137, 138 (9th Cir.1993); *United States v. One Parcel of Real Property*, 904 F.2d 487, 492 n. 3 (9th

12  Cir.1990) (finding a conclusory, self-serving affidavit, lacking detailed facts and any supporting

13  evidence, is insufficient to create a genuine issue of material fact).  However, although Plaintiff offers

14  this email evidence to support his argument, he fails to refute statements by Sean Coogan, wherein

15  Coogan states that the Resort has from time to time found mildew or mold growth, but upon discovery,

16  takes immediate steps to implement appropriate remedial measures.[23] [Coogan Decl. ¶ 9.]  Thus,

17  Plaintiff's evidence supports the argument that when Welk was made aware of mold issues at the Resort,

18  it dealt with such issues in a timely fashion.

19    Accordingly, unlike in *Kwikset*, where it was undisputed that *all* the locksets were not in fact

20  "Made in America," here, Plaintiff has failed to offer proof that the Resort is not otherwise "clean, safe,

21  and well-maintained," or that *all* units at the Resort are infested with mold.  Therefore, as Plaintiff is not

22  barred from using his Platinum Points at the Resort or any other non-Welk facility, he has not shown

23  that he has "lost money or profits" within the meaning of Proposition 64.  Nevertheless, even if the

24  Court found Plaintiff had standing under the UCL, Plaintiff has failed to produce sufficient evidence to

25  prove Defendants actions were unlawful, fraudulent, or otherwise constituted unfair business practices

26  under the UCL.

27

28    [23] Coogan also states that mold or mildew growth is common in buildings with bathrooms and kitchens.  [Coogan Decl., ¶ 9.]

## 2.    Unlawful Business Practices

By proscribing "any unlawful" business practices Section 17200 "borrows" violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.  *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 561, 973 P.2d 527 (1999).  Thus a "violation of almost any federal, state, or local law may serve as the basis for a[n] [unfair competition] claim."  *Plascencia v. Lending 1st Mortg.*, 583 F. Supp.2d 1090, 1098 (N.D. Cal. 2008) (citing *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838–39 (1994)).  *Progressive West Ins. Co. v. Yolo County Super. Ct.* (2005) 135 Cal.App.4th 263, 287, 37 Cal.Rptr.3d 434 ("An unlawful business practice under [Business and Professions Code] section 17200 is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law.") (internal quotations omitted).

Plaintiff alleges that Defendants engaged in "unlawful" conduct by violating: (1) California Civil Code § 2079 (failure of a real estate broker or salesperson to a prospective purchaser of residential real property to conduct a visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property); (2) California Civil Code § 1102.6 (failure to provide an accurate and current "Real Estate Transfer Disclosure Statement"); and (3) California Civil Code § 1710 (fraudulently suppressing information about the existence of mold).[24]  However, because Sections 2079 and 1102.6 apply only to the purchase of real property comprised of four units or less, and the Court has already found that ownership of Platinum Points do not constitute an interest in real property, nevertheless that Welk Resort San Diego has over 650 units— more than the statutory maximum—such violations cannot constitute predicate acts under the UCL unlawful prong.[25]  Similarly, because Section 1710 only defines "deceit," and does not provide an applicable violation, such provision cannot be the basis of Plaintiff's claim.[26]  *See Samura v. Kaiser*

---

[24] Plaintiff's 4AC originally contained a violation of California Civil Code Section 1929. However, the Court granted Defendants' motion to strike as to that violation.  [Doc. No. 70.]

[25] Plaintiff did not refute the non-application of sections 2079 and 1102.6. [Doc. No. 140, pp. 15-16.]

[26] Plaintiff did not oppose Defendants assertion that section 1710 could not be a basis of UCL liability under the unlawful prong.

1   *Found. Health Plan. Inc*., 17 Cal.App.4th 1284, 1301 (1993) (finding that various code sections

2   detailing legislative purpose and setting forth disclosure requirements could not be enjoined under the

3   UCL").  Accordingly, the Court **GRANTS** Defendants' motion for summary judgment under the

4   unlawful prong alleging violations of California Civil Code Sections 2079, 1102.6, and 1710.

5     **3.**  **Fraudulent Business Practices**

6     Plaintiff's allegations under the fraudulent prong fail for similar reasons. To state a claim for

7   fraud under the UCL a plaintiff must show that "reasonable members of the public are likely to be

8   deceived" by the alleged unfair business practice.  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th

9   Cir.2010) (internal quotations omitted).[27]  Deception can be "based on representations to the public

10   [that] are untrue, and also those which may be accurate on some level, but will nonetheless tend to

11   mislead or deceive."  *Mass. Mutual Life Ins. Co. v. Super. Ct.* (2002) 97 Cal.App.4th 1282, 1289-90,

12   119 Cal.Rptr.2d 190; *Prata v. Super. Ct.* (2001) 91 Cal.App.4th 1128, 1137, 111 Cal.Rptr.2d 296.  The

13   determination as to whether a business practice is deceptive is based on the likely effect such practice

14   would have on a reasonable consumer.[28] *Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496,

15   507, 129 Cal.Rptr.2d 486.  *Puentes*, 72 Cal.Rptr.3d at 909 ("Unless the challenged conduct targets a

16   particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable

17   consumer.").

18     "[I]n order to be deceived, members of the public must have had an expectation or an assumption

19   about" the matter at hand.  *Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 39 Cal.Rptr.3d

20   634, 639–48 (2006).  Although "surveys and expert testimony regarding consumer assumptions and

21   expectations may be offered," they are not required.  Nevertheless, isolated examples of actual

---

23     [27] Fraud under Section 17200 does not refer to the common law tort of fraud, but only requires a showing that members of the public "are likely to be deceived."  *Puentes v. Wells Fargo Home Mortg., Inc*., 160 Cal.App.4th 638, 72 Cal.Rptr.3d 903, 909 (2008). "This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices."  *Morgan v. AT&T Wireless Servs, Inc*., 177 Cal.App.4th 1235, 1255 (2009).

26     [28] Nevertheless, claims arising under the UCL's fraudulent prong must be pleaded with particularity under Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007) (stating that a plaintiff "must include a description of the time, place, and specific content of the false representations as well as the parties to the misrepresentations").

1  deception are insufficient to state a claim under the UCL's fraudulent prong. *See Clemens v.*

2  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008).  Moreover, where a plaintiff alleges that

3  the defendant failed to disclose material facts, the plaintiff must first establish that the defendant had a

4  duty to disclose those facts. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1557, 62

5  Cal.Rptr.3d 177 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under

6  the fraudulent prong of the UCL.").

7        Here, Plaintiff alleges Defendants violated the fraudulent prong by failing to disclosure to

8  consumers that time-share dwellings at the Resort suffered from dangerous leaks, water intrusion, mold,

9  mildew, and/or fungus; failed to truthfully respond to inquiries by time-share point owners regarding the

10  condition of the resort; and disseminated false and misleading statements regarding the condition of

11  time-share dwellings. (Doc. No. 58, p. 16:19-28-17:1-3.)  Moreover, Plaintiff alleges that the "Welk

12  Defendants had a duty to disclose the mold issues in light of the fact that (i) Plaintiff advised the Welk

13  Defendants about the specific reason for his purchase; and (ii) the Welk Defendants assured Plaintiff, in

14  light of Plaintiff's stated reasons for the purchase, that the Resort was safe." [Doc. No. 151, p. 3:20-24.]

15  Conversely, Defendants contend they were under no legal duty to disclose the presence of naturally

16  occurring substances, and nevertheless, Plaintiff presented no evidence that the Resort was not safe and

17  or well-maintained.

18        Although Plaintiff does not need to present evidence that he was "actually deceived" by

19  Defendants conduct, to prevail, Plaintiff must produce evidence showing "a likelihood of confounding

20  an appreciable number of reasonably prudent purchasers exercising ordinary care."  *See Clemens*, 534

21  F.3d 1017 at 1026.  Plaintiff has failed to met this burden.  For example, similar to *Daugherty v.*

22  *American Honda Motor Company*, 144 Cal.App.4th 824, 830, 51 Cal.Rptr.3d 118 (2006), wherein the

23  California Court of Appeal found the public was not likely to be deceived because "[t]he only

24  expectation buyers could have had about [a particular] engine was that it would function properly for the

25  length of [the manufacturer]'s express warranty," here, the only expectation buyers of Platinum Points

26  could have had with respect to the maintenance and cleanliness of the Resort, even taking into account

27  Defendants' representations, was that its would be clean, safe, and well maintained.  Thus, even though

28  Defendants may have assumed a duty to Plaintiff by voluntarily responding to his inquiries regarding

1   the maintenance and suitability of the Resort for his son, aside from Plaintiff's bare allegations, he has

2   produced no evidence to suggest that a reasonable consumer would have expected or assumed that the

3   entire Resort was, and has always been, free of any mold, mildew, or water intrusion.  *See e.g., In re*

4   *sony Grand Wega KDF-E A10/A20 Series Rear projection HDTV Tel. Litig.*, 758 F.Supp.2d 1077, 1089

5   (S.D. Cal. 2010) (dismissing plaintiff's claims for failing to allege actual misstatements about "absolute

6   characteristics of the televisions").  This is only further compounded by the fact that Plaintiff has not

7   shown that Defendants made "affirmative misrepresentations" as to the safety and maintenance of the

8   Resort.  Accordingly, the Court **GRANTS** Defendants' motion for summary judgment under the

9   fraudulent  prong.

10          **4.       Unfair Business Practices**

11          Unfair business practices are not defined under the UCL.  *Davis v. HSBC Bank Nevada, N.A.*,

12   691 F.3d 1152, 1169 (9th Cir. 2012).  Accordingly, there are two opposing lines of California appellate

13   court opinions defining what constitutes an "unfair" business practices for purposes of the UCL. *See,*

14   *e.g., Morgan v. Harmonix Music Sys., Inc*., 2009 WL 2031765, at *4 (N.D.Cal. July 7, 2009) (noting the

15   split in authority); *Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 39 Cal.Rptr.3d 634, 639–48

16   (Ct.App.2006) (same).  "One line defines 'unfair' as prohibiting conduct that is immoral, unethical,

17   oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the

18   utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id*. (citing *Smith*

19   *v. State Farm Mut. Auto. Ins. Co.* 93 Cal.App.4th 700, 113 Cal.Rptr.2d 399, 415 (Ct.App.2001). "The

20   other line of cases holds that the public policy which is a predicate to a consumer unfair competition

21   action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or

22   regulatory provisions." *Bardin*, 39 Cal.Rptr.3d at 636 (citing *Scripps Clinic v. Super. Ct.*, 108

23   Cal.App.4th 917, 134 Cal.Rptr.2d 101, 116 (2003)).

24          Here, Plaintiff's allegations under the unfair prong fail under either test.  First, the undisputed

25   evidence in this case shows that although the Resort is not immune to mold, mildew, and/or water

26   intrusion issues, when these conditions occur, the Resort takes steps to immediately remedy the

27   problem. [Doc. No. 128, Coogan Decl., ¶ 9.]  Moreover, although Plaintiff is entitled to know about the

28   presence of mold, mildew, or water intrusion issues at the Resort, failure to disclose such issues without

1   inquiry does not constitute "unfair" conduct.  *See e.g., Clemens*, 534 F.3d 1017 at 1027 (citing

2   *Daugherty*, 144 Cal.App.4th at 839, 51 Cal.Rptr.3d 118) ("[T]he failure to disclose a defect that might,

3   or might not, shorten the effective life span of an automobile part that functions precisely as warranted

4   throughout the term of its express warranty cannot be characterized as causing a substantial injury to

5   consumers, and accordingly does not constitute an unfair practice under the UCL.").  Second, because

6   the Court has already found that Plaintiff's alleged violations under the unlawful prong fails, Plaintiff

7   cannot properly tether his "unfair" allegations to an applicable statutory violation.  Accordingly, the

8   Court **GRANTS** Defendants' motion for summary judgment under the unfair prong.

9   **VI.   *Breach of the Implied Warranty of Habitability***

10         Plaintiff's sixth cause of action alleges Defendants breached the implied warranty of habitability

11   by (1) allowing water to intrude into the time-share dwellings and Resort; (2) failing to repair, in a

12   timely and reasonable manner, the defective conditions in and around the time-share dwellings and the

13   Resort; (3) failing to abate the mold, mildew and/or fungus throughout the time-share dwellings and

14   Resort; and, (4) failing to notify Plaintiff of the presence of mold, mildew and/or fungus and the health

15   risks associated with such conditions.[29]  [4AC ¶ 66.]  Defendants argue that because Plaintiff is not

16   Welk's tenant, Plaintiff's claim fails as a matter of law.  [Doc. No. 128, p. 16.] The Court is inclined to

17   agree.

18         "There is a common law implied warranty of habitability in residential leases in California. . ."

19   *Fairchild v. Park*, 90 Cal. App. 4th 919, 924 (2001) (quoting *Green v. Superior Court*, 10 Cal. 3d. 616,

20   619 (1974)).  Accordingly, a landlord has a "duty to maintain leased premises in a habitable condition

21   during the term of the lease."  *Green,* 10 Cal.3d at 623.  Violations of the implied warranty of

22   habitability are tethered to violations of the state's housing codes.  *See Green*, 10 Cal.3d at 719.

23   Accordingly, "substantial compliance with applicable building and housing code standards, which

24   materially affect health and safety, will suffice to meet the landlord's obligations under the common law

25   implied warranty of habitability."  *Id*.

26   _____

27         [29] In addition to the common law implied warranty of habitability, a landlord has a "statutory
     obligation under California Civil Code Section 1941, to keep residential property in a condition fit for
28   [human] occupation, and repair all subsequent dilapidations therefore."  *Fairchild*, 90 Cal. App.4th at
     925 (quoting Cal. Civ. Code § 1941).  Plaintiff has also alleged violation of Section 1941.

1      Here, however, because Plaintiff has failed to present any evidence to rebut Defendants'

2  argument that Plaintiff's Platinum Points are not in the nature of a lease, as they do not constitute an

3  interest in real property, the Court finds Plaintiff has failed to present a genuine dispute.  *See Fairchild*,

4  90 Cal. App.4th at 924 (holding the implied warranty is implied in all *residential leases in California*)

5  (emphasis in original).  To present a genuine dispute, and thereby survive summary judgment, Plaintiff

6  cannot hang his hat on the Court's ruling at the motion to dismiss stage.  *See Jiminez v. Accounts*

7  *Receivable Mgm't, Inc*., 2010 WL 5829206 *4 (C.D. Cal. 2010) (additional evidence is required once

8  the Plaintiff proceeds past the pleading stage).  Moreover, even if Plaintiff could prove that ownership of

9  Platinum Points gave rise to a claim for breach of the implied warranty of habitability, Plaintiff has

10  failed to provide evidence that the Resort is not in compliance with applicable housing codes.  To the

11  contrary, the only evidence Plaintiff presents is that there were mold problems at the Resort in 2009, and

12  when such problems were uncovered, the Resort took steps to remedy the issue.  Accordingly the Court

13  **GRANTS** Defendants' motion for summary judgment with respect to Plaintiff's sixth cause of action

14  alleging breach of the implied warranty of habitability.

### CONCLUSION

16      For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment

17  in its entirety.  The Clerk of the Court is instructed to enter judgment accordingly.

19  **IT IS SO ORDERED.**

21  **DATED:  October 30, 2012**

**Hon. Anthony J. Battaglia**
**U.S. District Judge**